[Cite as *Bowman v. Bowman*, 2014-Ohio-2851.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF MEDINA | ) | |

| | |
|---|---|
| CARMIN BOWMAN | C.A. No.     13CA0064-M |
| Appellant | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| MARY ALICE BOWMAN | COURT OF COMMON PLEAS COUNTY OF MEDINA, OHIO |
| Appellee | CASE No.     12DV0213 |

DECISION AND JOURNAL ENTRY

Dated: June 30, 2014

WHITMORE, Judge.

{¶1}   Appellant, Carmin Bowman, appeals from the judgment of the Medina County Court of Common Pleas, Domestic Relations Division, granting Appellee, Mary Alice Bowman's, request for a civil protection order.  This Court affirms.

I

{¶2}   In August 2012, Mary and Carmin were in the process of getting a divorce. Despite the contested divorce they continued to reside together in the marital home with their three minor children.  At this point in time their daughter M.B. was eleven years old, their daughter N.B. was eight years old, and their son D.B. was seven.

{¶3}   On August 28, 2012, Carmin slapped M.B. in the face for being disobedient. According to Mary, the slap knocked M.B. to the ground, left a handprint on her face, and caused her lip to swell.  Mary took the two daughters to the police station and filed a report.  No charges were filed against Carmin.

{¶4} After she finished at the police station, Mary waited to return to the house until Carmin left to take D.B. to Boy Scouts. Mary then took the girls home and made the three of them dinner. When Carmin and D.B. got back to the house, Mary warmed dinner for D.B. and Carmin became upset that Mary had not prepared any dinner for him. According to Mary, Carmin got within an inch of her face and started screaming obscenities. He then told her she could no longer drive his car and went into the garage to remove her things. Mary testified that Carmin's behavior frightened her so she called the police and sent the kids running to a neighbor's house. Mary then locked Carmin out of the house, hid, and waited for the police to arrive. Mary said when Carmin realized he was locked out of the house, he began body slamming the door and cussing at her. Fearing that he would eventually gain entry into the house, Mary fled out of the back door and to the neighbor's while Carmin was trying to enter through the front door.

{¶5} Carmin admitted to slapping M.B., but explained that he did so to discipline her for being disrespectful. He testified that he did ask Mary why she did not cook him dinner when he buys all of the food for the house. He further testified that he told her she was not going to drive the car anymore and went into the garage to remove her things. He realized shortly thereafter that she had locked him out of the house. Carmin denied that he was body slamming the door.

{¶6} The police arrived and spoke to Mary and Carmin, but did not file a report. Mary took the children and left the residence for the night. The following day she filed a petition for a domestic violence civil protection order ("CPO"), and the court granted an ex parte CPO that same day. After a full hearing on September 23, 2012, the court issued a CPO against Carmin, protecting Mary and the three children for four years. Carmin filed objections to the magistrate's

decision to grant the CPO. In July 2013, a judge overruled his objections and modified the CPO so that custody and parenting time would be controlled by the orders in the parties' divorce case. Carmin now appeals and raises two assignment of error for our review.[1]

II

Assignment of Error Number One

INSUFFICIENT EVIDENCE WAS PRESENTED BY THE PETITIONER TO SUSTAIN AND SUPPORT THE ISSUANCE OF THE CIVIL PROTECTION ORDER AGAINST RESPONDENT[.]

Assignment of Error Number Two

SUFFICIENT EVIDENCE MUST BE PROVED TO SHOW THAT THE PETITIONER IS PRESENTLY IN DANGER OF DOMESTIC VIOLENCE[.]

{¶7} In his two assignments of error, Carmin argues that the evidence presented was insufficient to support the issuance of a domestic violence CPO, and therefore, the court erred in granting Mary's petition. We disagree.

{¶8} "In civil cases, as in criminal cases, the sufficiency of the evidence is quantitatively and qualitatively different from the weight of the evidence." *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, paragraph two of the syllabus. Sufficiency is "a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law. * * *

---

[1] While Carmin lists six assignments of error in the beginning of his brief, he only lists two within his argument section. App.R. 16(A)(7) requires an "argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions." Because Carmin only articulates arguments for two of his assignments of error, we limit our review to those two. *See Citibank, N.A. v. Rowe*, 9th Dist. Lorain No. 12CA010217, 2013-Ohio-523, ¶ 19 ("[a]n appellant's assignment of error provides a roadmap for our review and, as such, directs our analysis of the trial court's judgment.") (Internal quotations and citations omitted.).

In essence, sufficiency is a test of adequacy." (Internal quotation omitted.) *Eastley* at ¶ 11, quoting *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997).

{¶9} On appeal, Carmin limits his arguments to challenging the sufficiency of the evidence. We, therefore, limit our review accordingly. "Consequently, we must determine whether, viewing the evidence in the light most favorable to [Mary], a reasonable trier of fact could find that [she] demonstrated by a preponderance of the evidence that a civil protection order should issue." *R.C. v. J.G.*, 9th Dist. Medina No. 12CA0081-M, 2013-Ohio-4265, ¶ 7.

{¶10} The civil domestic violence protection order is designed to provide the court with a tool in which "to bring about a cessation of domestic violence against the family or household members." R.C. 3113.31(E)(1). Thus, protection orders are intended to prevent further domestic violence. *Felton v. Felton*, 79 Ohio St.3d 34, 41 (1997). "When granting a protection order, the trial court must find that petitioner has shown by a preponderance of the evidence that petitioner or petitioner's family or household members are in danger of domestic violence." *Felton* at paragraph two of the syllabus; R.C. 3113.31. "Evidence may also be considered in light of the recent history between the [parties]." *State v. Payne*, 178 Ohio App.3d 617, 2008-Ohio-5447, ¶ 10 (9th Dist.).

{¶11} Domestic violence includes "[a]ttempting to cause or recklessly causing bodily injury," "[p]lacing another person by threat of force in fear of imminent serious physical harm," and "[c]ommitting any act with respect to a child that would result in the child being an abused child, as defined in section 2151.031 of the Revised Code[.]" R.C. 3113.31(A)(1). A child who is subject to corporal punishment is not an abused child unless the child "suffers physical or mental injury that harms or threatens to harm the child's health or welfare" or the punishment is "excessive under the circumstances and creates a substantial risk of serious physical harm to the

child." R.C. 2151.031(D), R.C. 2919.22(B)(3). When determining whether corporal punishment was excessive, a trial court must consider the totality of the circumstances "including the age of the child, the child's response to non[-]corporal punishment, and the behavior being punished." *See In re K.B.*, 9th Dist. Summit No. 21365, 2003-Ohio-3784, ¶ 9-15, quoting *In re Jandrew*, 4th Dist. Washington No. 97 CA 4, 1997 WL 802848, *4 (Dec. 29, 1997), fn.3.

{¶12} On August 28, 2012, Mary was putting groceries away when her two daughters began quarreling. Upon hearing the yelling, Carmin came in from the garage and asked what was going on. Carmin and M.B. then began arguing. Mary testified that Carmin grabbed M.B.'s arm and demanded that she hand over her iPod. When M.B. refused, he slapped her across the face with an open hand. According to Mary, the next thing she knew, M.B. was screaming, holding her face, and rolling on the floor. Mary testified that the slap left a handprint on M.B.'s face and caused her lip to swell. Mary and the two daughters went to the police station and filed a report. According to Carmin, the police called while Mary was at the station and told him that they would not be pressing charges, but that there was "a fine line between domestic violence and discipline."

{¶13} Mary testified that, after leaving the police station, the girls did not want to go home because they were scared of Carmin, so she took them over to her mother's house to wait for Carmin and their son to leave for a Boy Scout meeting. She then took the girls home, made them dinner, and M.B. and Mary went to M.B.'s bedroom to avoid seeing Carmin when he came home. When Carmin returned home and they heard him close the door to his bedroom, M.B. went to watch a television show in the living room and Mary went to make dinner for her son. While their son was getting ready to eat, Carmin emerged from his bedroom and wanted to know where his dinner was. According to Mary, Carmin started screaming profanities within an inch

of her face and told her not to eat the food that he bought. Mary testified that Carmin then "went nuts." He told her he was going to turn off her cell phone and that she could no longer drive his car.

{¶14} Carmin took the car keys, ran outside, and "started throwing stuff out of the car." Mary said she became frightened and called the police. She then told the kids to run to a neighbor's house and wait for her to come get them. Mary locked the doors so Carmin could not get back inside the house and hid in the corner of the kitchen to wait for the police. According to Mary, when Carmin realized that he had been locked out of the house, he started cussing at her and "body slamming the door" trying to gain entry. While he was trying to get in through the front door, Mary ran out of the back and to the neighbor's. The police arrived and spoke with Carmin and Mary, but did not file any charges. Mary took the kids and left the home for the evening.

{¶15} Mary testified that Carmin has a history of anger problems and that the violence has escalated since he stopped taking his prescribed antidepressants. Mary described an incident a few months before where Carmin smacked N.B. in the back so hard that it knocked her off of the couch and left a handprint on her back through her shirt. Mary detailed another incident involving her son about a year prior. According to Mary, she had to intervene when Carmin had their then six year old son pinned against the side of the deck and was hitting him in the face with a thick, rolled-up magazine. Mary said that Carmin then "back handed" her in the face and pushed her against the house. Mary also said that Carmin had, on numerous occasions, hit the kids with a "double[d] up" belt on their bare bottoms as a form of discipline. Mary stated that she had talked to Carmin "over and over" about his methods of punishment, but he would just respond that his father hit him and that this was the only way the kids would listen.

{¶16} Mary testified that she had a job as a nurse working weekend shifts but that she quit that job because she feared for the kids' safety being alone in Carmin's care every weekend. Mary further testified that Carmin had reminded her that he had guns in the home and that she understood this to be a threat to harm her with them. Mary said Carmin is "a very angry man" who is upset with her for filing for divorce. Mary explained that she filed for a CPO because she feared for her safety and for the safety of their three children.

{¶17} Carmin denied using excessive force in punishing their children. He admitted that he smacked M.B. in the face, but that he did so because she was being disrespectful. He testified that he had, on a couple of rare occasions, used a belt as a form of discipline, but denied that he ever hit the children on their bare bottoms. Carmin stated that he asked Mary why she had not prepared him dinner and told her that he buys the food, but "[she] can't even cook [him] dinner." He then told her that he did not need to provide her with a car. Carmin admitted that he then went out to the garage and began removing things from it, but denied throwing things from the car. According to Carmin, the next thing he knew he could not get back inside the house. Carmin testified that he did not understand why the police were called and that neither Mary nor the kids appeared to be scared of him.

{¶18} Viewing the evidence in a light most favorable to Mary, a rational finder of fact could have found that Carmin's use of corporal punishment was "excessive under the circumstances and create[d] a substantial risk of serious physical harm to [M.B.]" R.C. 2919.22(B)(3). Carmin slapped M.B., an eleven year old girl, in the face with enough force to knock her to the ground, leave a handprint the following day, and cause her lip to swell because she would not hand over her iPod. Further, there was sufficient evidence to support a finding that Mary and the children were in fear of imminent serious physical harm from Carmin's

increasingly aggressive behavior.  *See* R.C. 3113.31(A)(1)(b); *Felton*, 79 Ohio St.3d at paragraph two of the syllabus.  Because there is sufficient evidence to support Mary's request for a CPO, covering her and the three children, Carmin's assignments of error are overruled.

### III

{¶19}  Carmin's assignments of error are overruled.  The judgment of the Medina County Court of Common Pleas, Domestic Relations Division, is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution.  A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run.  App.R. 22(C).  The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.


BETH WHITMORE
FOR THE COURT

CARR, P. J.
MOORE, J.
<u>CONCUR.</u>

<u>APPEARANCES:</u>

MICHAELE TYNER, Attorney at Law, for Appellant.

ADAM J. HUBBLE, Attorney at Law, for Appellee.