[Cite as *T.S. v. B.S.*, 2018-Ohio-4987.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| [T.S.], | : | |
| Petitioner-Appellee, | : | No. 18AP-302 |
| | | (C.P.C. No. 18DV-185) |
| v. | : | |
| | | (REGULAR CALENDAR) |
| [B.S., III], | : | |
| Respondent-Appellant. | : | |

D E C I S I O N

Rendered on December 13, 2018

**On brief:** *Eugene R. Butler Co., LPA,* and *Eugene R. Butler*, for petitioner-appellee. **Argued:** *Eugene R. Butler.*

**On brief:** *Sowald, Sowald, Anderson, Hawley & Johnson,* and *Eric W. Johnson*, for respondent-appellant. **Argued:** *Eric W. Johnson.*

APPEAL from the Franklin County Court of Common Pleas, Division of Domestic Relations and Juvenile Branch

LUPER SCHUSTER, J.

{¶ 1} Respondent-appellant, B.S, III ("B.S."), appeals from an order of the Franklin County Court of Common Pleas, Division of Domestic Relations and Juvenile Branch, issuing a civil protection order to petitioner-appellee, T.S. For the following reasons, we affirm.

## I. Facts and Procedural History

{¶ 2} On February 9, 2018, T.S. filed a petition for a domestic violence civil protection order against B.S., her ex-husband. The trial court granted her an ex parte temporary civil protection order that day and set the matter for a hearing. T.S. sought the civil protection order for herself and her two minor children. B.S. is the father of the two minor children.

{¶ 3} The trial court conducted a hearing on T.S.'s petition for a civil protection order on April 9, 2018. During the hearing, T.S. testified that she had been married to B.S. for approximately 14 years, and the two of them had two children together, M.B., 17 years old at the time of the hearing, and M.C., 13 years old at the time of the hearing. T.S. and B.S. have been divorced since 2012.

{¶ 4} T.S. described the incident that led her to file the petition for the civil protection order. Pursuant to T.S.'s testimony, on or about February 5, 2018, T.S. was attending M.C.'s basketball game and had a male guest with her. When B.S. arrived at the game, T.S. testified that she greeted him but that upon seeing T.S.'s male guest, B.S. became "visibly upset" and left the game without staying to talk to M.C. (Tr. at 12.) The next day, February 6, 2018, T.S. overheard a phone conversation between B.S. and M.B. in which B.S. was discussing "adult" topics with M.B. such as how much B.S. pays in child support, whether B.S.'s mother was planning on setting aside "a sizeable amount of money" for M.B. and M.C., and why B.S. abruptly left M.C.'s basketball game the other day. (Tr. at 8.) After overhearing this conversation, T.S. testified she called B.S. to ask him not to speak about such "adult" topics with the children. (Tr. at 8.)

{¶ 5} T.S. testified that as the phone conversation with B.S. progressed, the tone escalated and, as "was typical," B.S. brought up their divorce and began to yell. (Tr. at 8.) T.S. said B.S. then told her:

> I'll tell you why, why I left, you know, I needed to get out of there and I'm tired of this, I need to get out of there. I'm ready to go to jail, I'm ready to kill someone, I'm ready to die.

(Tr. at 9.) Upon hearing this, T.S. said she asked B.S. whether he was threatening her and instead of answering, B.S. repeated the same statement about being "ready to go to jail and ready to kill somebody and - - and wanting to die." (Tr. at 9.)

{¶ 6} T.S. testified that this phone conversation with B.S. "terrified" her and that she believed B.S. was threatening her. (Tr. at 10.) She said she was unable to sleep that night, did not go to work the next day, and spent nearly $1,000 the next day to upgrade the security system at her home. T.S. testified she was not entirely certain how to proceed to protect herself but that she called the police and initiated the process that next day to file a petition for a civil protection order.

{¶ 7}    Further, T.S. testified that part of the reason she was so frightened by B.S.'s statements on the phone was that she had been through a number of angry incidents with B.S. in the years since their divorce.  T.S. described an incident in November 2014 in which B.S. and M.B. got into an argument at B.S.'s home while T.S. was dropping off the children. (Tr. at 15.)  T.S. said she tried to diffuse the situation but that B.S. became "enraged" and screamed at her while crying, "this is your fault, this is your fault, you're the reason that me and my kids aren't together.  I need to get rid of you." (Tr. at 15.)  M.C. started crying, and T.S. said she was "afraid for [her] life."  (Tr. at 15.)

{¶ 8}    T.S. testified B.S. frequently loses his temper when he interacts with her, especially any time they talk about their divorce.  She also said there have been "numerous times" where B.S. has been in her driveway yelling at her and "physically get[ting] up in [her] face."  (Tr. at 16.)

{¶ 9}    According to T.S.'s testimony, another incident occurred in 2016 while T.S. was in Washington D.C. for a work trip.  She received a FaceTime call from M.C. in which her daughter was "yelling and screaming and crying," asking for T.S. to come get her.  (Tr. at 18.)  T.S. testified she could see B.S. outside the car yelling, screaming, and crying while the children were inside the car begging T.S. to come home and get them.  T.S. also described a separate incident in 2016 in which B.S. got into an altercation with M.B. at M.B.'s basketball game and T.S. had to remove M.B. from the situation.

{¶ 10} While these events all occurred after their divorce, T.S. testified there were several occasions during their marriage that caused her to be afraid.  T.S. said that when M.B. was little, T.S. witnessed B.S. try to put M.B.'s head in the toilet.  She said M.B. has "openly" confronted B.S. about "the abuse" and that B.S. had "admit[ted] it" and agreed to "try to do better."  (Tr. at 27.)  Additionally, T.S. testified that the incident that caused her to leave the marriage occurred on August 28, 2010 when B.S. grabbed M.B. by the collar and throat and started shaking him over a fight about a football glove.  T.S. testified that M.B. has asked that B.S. not attend his basketball games.  T.S. said she believes B.S.'s behavior has been "escalating" over time.  (Tr. at 32.)

{¶ 11} At the conclusion of T.S.'s testimony, B.S. moved the trial court to dismiss the petition on the basis that T.S. had failed to prove any facts that would justify the issuance of a civil protection order.  The trial court heard arguments and denied B.S.'s oral motion to dismiss.

{¶ 12} B.S. then testified at the hearing.  B.S. did not deny stating during the February 6, 2018 phone call that he was ready to go to jail, ready to kill someone, and ready to die.  However, B.S. said he meant the statement to indicate that he "would die internally and spiritually, physically and emotionally to be a better person so [he] can see [his] kids," and that he would kill someone if they "mess[ed]" with his kids.  (Tr. at 51.)  B.S. testified that when he said he was ready to kill someone, "[i]t was just a general statement" and "was not directed to anyone specifically."  (Tr. at 52.)  When T.S. asked whether B.S. was threatening her, B.S. testified that he did not deny threatening her but instead asked her "how did you interpret that?" (Tr. at 69.)  Additionally, when asked about the leaving M.C.'s basketball game the night before the phone call, B.S. said he "couldn't handle the situation," meaning "the fact that [T.S. is] dating five years after the divorce."  (Tr. at 54.)

{¶ 13} At the conclusion of the testimony, the trial court stated it would grant T.S.'s petition for a civil protection order for herself, but not including the children, for a period of five years.  The trial court journalized its decision in an April 9, 2018 order granting T.S. a five-year civil protection order against B.S.  B.S. timely appeals.[1]

## II.  Assignments of Error

{¶ 14}  B.S. assigns the following errors for our review:

> [1.] The trial court erred by denying appellant's motion to dismiss at the conclusion of appellee's presentation of evidence.
>
> [2.] The trial court erred by granting appellee's request for a civil protective order against appellant.
>
> [3.] The trial court erred by issuing a civil protective order against appellant for a period of five years.

## III.  First Assignment of Error – Civ.R. 41(B)(2) Motion to Dismiss

{¶ 15} In his first assignment of error, B.S. argues the trial court erred in denying his motion to dismiss at the conclusion of T.S.'s presentation of evidence.

{¶ 16} Civ.R. 41(B)(2) governs dismissal in a non-jury trial and provides:

> After the plaintiff, in an action tried by the court without a jury, has completed the presentation of the plaintiff's evidence, the defendant, without waiving the right to offer evidence in the

---

[1] We note that T.S. initially filed a cross-appeal but subsequently moved to dismiss her cross-appeal.  By journal entry dated November 1, 2018, this court granted T.S.'s motion to dismiss her cross-appeal.

event the motion is not granted, may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. The court as trier of the facts may then determine them and render judgment against the plaintiff or may decline to render any judgment until the close of all the evidence. If the court renders judgment on the merits against the plaintiff, the court shall make findings as provided in Civ.R. 52 if requested to do so by any party.

{¶ 17} As an initial matter, we note the parties dispute the appropriate standard of review. B.S. asserts we must review for whether the trial court's decision was against the manifest weight of the evidence, arguing the court must consider whether T.S.'s evidence was persuasive or credible enough to satisfy her burden of proof. *See Gianetti v. Teakwood, Ltd.*, 10th Dist. No. 15AP-413, 2016-Ohio-213, ¶ 11 ("[a]n appellate court will not overturn a Civ.R. 41(B)(2) involuntary dismissal unless it is contrary to law or against the manifest weight of the evidence"). T.S., on the other hand, asserts that we must review the trial court's decision on B.S.'s Civ.R. 41(B)(2) motion for an abuse of discretion. *Froehlich v. State Dept. of Mental Health*, 10th Dist. No. 05AP-129, 2005-Ohio-7026, ¶ 11 ("[t]he standard of review on appeal for the denial of a motion to dismiss pursuant to Civ.R. 41(B)(2) is abuse of discretion"). Because the trial court denied B.S.'s motion for involuntary dismissal, we agree with T.S. that the appropriate standard of review for the *denial* of a Civ.R. 41(B)(2) motion to dismiss is abuse of discretion. *Id.* An abuse of discretion connotes a decision that was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶ 18} "The 'statutory criterion to determine whether or not to grant a civil protection order pursuant to R.C. 3113.31 is the existence or threatened existence of domestic violence.' " *J.R. v. E.H.*, 10th Dist. No. 16AP-431, 2017-Ohio-516, ¶ 15, quoting *Thomas v. Thomas*, 44 Ohio App.3d 6, 8 (10th Dist.1998). As relevant here, pursuant to R.C. 3113.31(A)(1)(b), in order to warrant the granting of a civil protection order, T.S. was required to show, by a preponderance of the evidence, that B.S. placed her, by threat of force, in fear of imminent serious physical harm. *Fleckner v. Fleckner*, 177 Ohio App.3d 706, 2008-Ohio-4000, ¶ 17 (10th Dist.), citing *Felton v. Felton*, 79 Ohio St.3d 34 (1997), paragraph two of the syllabus.

{¶ 19} After reviewing T.S.'s presentation of evidence, we conclude the trial court did not abuse its discretion in denying B.S.'s Civ.R. 41(B)(2) motion for involuntary

dismissal. T.S. testified that B.S. told her, after an angry confrontation, that he was ready to go to jail, ready to kill someone, and ready to die. When she asked him whether he was threatening her, he did not use the opportunity to clarify that the threat was not directed at her and instead repeated the threatening statement. T.S. said she feared for her life as a result. She also testified that B.S.'s behavior toward her had escalated over time. Thus, based on T.S.'s testimony, the evidence indicated T.S. feared she was in imminent physical danger. Accordingly, the trial court did not abuse its discretion in denying B.S.'s Civ.R. 41(B)(2) motion for involuntary dismissal. We overrule B.S.'s first assignment of error.

## IV.  Second Assignment of Error – Granting the Civil Protection Order

{¶ 20}  In his second assignment of error, B.S. argues the trial court erred in granting T.S.'s petition for a civil protection order.

{¶ 21}  An appellate court reviews a trial court's grant of a civil protection order to " 'determine whether sufficient, credible evidence supports a finding that the respondent had engaged in acts or threats of domestic violence.' " *Fleckner* at ¶ 15, quoting *Kabeer v. Purakaloth*, 10th Dist. No. 05AP-1122, 2006-Ohio-3584, ¶ 7. Thus, we will not reverse the trial court's grant of the civil protection order as being against the manifest weight of the evidence so long as some competent, credible evidence goes to the essential elements of the case. *Id.*, citing *Kabeer* at ¶ 7. Moreover, if the evidence is susceptible to more than one interpretation, the appellate court must construe the evidence consistently with the trial court's judgment. *Id.*, citing *Kabeer* at ¶ 7.

{¶ 22}  As we explained in our resolution of B.S.'s first assignment of error, in order for T.S. to obtain the civil protection order, she was required to show, by a preponderance of the evidence, that B.S. placed her, by threat of force, in fear of imminent serious physical harm. R.C. 3113.31(A)(1)(b); *Fleckner* at ¶ 17, citing *Felton* at paragraph two of the syllabus. Threatening to kill someone satisfies the definition of "serious physical harm" as stated in R.C. 2901.01(A)(5) and as applied to R.C. 3113.31(A). *Fleckner* at ¶ 19.

{¶ 23}  There is no dispute here that B.S. told T.S. in the February 6, 2018 phone call that he was "ready to kill someone." B.S. argues the trial court erred when it concluded that his statement that he was ready to kill someone was directed at T.S. However, the record demonstrates that when T.S. asked him if he intended his statement as a threat against her, B.S. did not deny it and instead repeated the statement that he was ready to kill someone. T.S. testified she was afraid for her life and believed B.S. intended that statement as a direct

threat against her.  As the trial court noted, B.S.'s refusal to take the opportunity to clarify the statement when directly asked to do so compelled the conclusion that the threat to kill someone was directed at T.S.

{¶ 24}  B.S. additionally argues that even if the statement could be construed as a threat of force, it was not an "imminent" threat because it was vague and non-specific. However, as this court has explained, " '[i]mminence does not require an offender to carry out a threat immediately or be in the process of carrying it out. * * * [C]ivil protection orders are intended to prevent violence before it happens.' " *Fleckner* at ¶ 20, quoting *Young v. Young*, 2d Dist. No. 2005-CA-19, 2006-Ohio-978, ¶ 105.  Under R.C. 3113.31, the critical inquiry in determining whether the threat was "imminent" is " 'whether a reasonable person would be placed in fear of imminent (in the sense of unconditional, non-contingent) serious physical harm." *Fleckner* at ¶ 20, quoting *Maccabee v. Maccabee*, 10th Dist. No. 98AP-1213 (June 29, 1999).  Thus, threats of violence constitute domestic violence under R.C. 3113.31 if the threats result in reasonable fear.  *Fleckner* at ¶ 21.  A court should determine whether the fear is reasonable with reference to the history between the parties. *Id.*

{¶ 25}  T.S.'s testimony at trial indicated that although the parties had been divorced since 2012, B.S.'s behavior toward her continued to escalate into alarming and angry outbursts.  She also testified that during their marriage, B.S. acted in ways that caused her fear.  Given the escalating history between the parties and B.S.'s refusal to tell T.S. that his desire to kill someone was not directed at her, there was sufficient competent, credible evidence to support the trial court's granting of the civil protection order.  Thus, we overrule B.S.'s second assignment of error.

## V.  Third Assignment of Error – Length of the Civil Protection Order

{¶ 26}  In his third and final assignment of error, B.S. argues the trial court erred in determining the length of the civil protection order to be five years.

{¶ 27}  Generally, an appellate court reviews a challenge to the scope of a civil protection order for an abuse of discretion.  *Campbell v. Underwood*, 10th Dist. No. 09AP-1125, 2010-Ohio-2909, ¶ 11, citing *Downs v. Strouse*, 10th Dist. No. 05AP-312, 2006-Ohio-505, ¶ 14.

{¶ 28}  Under R.C. 3113.31, the maximum permissible time for the duration of a civil protection order is five years.  R.C. 3113.31(E)(3)(a).  Though B.S. agrees the trial court has

discretion in fashioning the scope of the civil protection order, he nonetheless argues the trial court abused its discretion in choosing the maximum permissible time without sufficient explanation.  However, B.S. points to no authority indicating a trial court abuses its discretion when imposing the maximum permissible duration of a civil protection order. During the hearing, the trial court noted that the parties had been divorced since 2012 yet B.S.'s anger and behavior toward T.S. had only seemed to escalate.  Given the severity of the threat against T.S.—namely, that B.S. threatened to kill her—and the length of the time that had passed since the parties divorced, we cannot say the trial court abused its discretion in ordering the civil protection order to last for five years under these particular facts.  S*ee, e.g., Taylor v. Taylor*, 2d Dist. No. 2012-CA-14, 2012-Ohio-6190, ¶ 27 (trial court did not abuse its discretion in setting the duration of a stalking civil protection order for five years, the maximum permissible duration, where the respondent's actions "became more desperate as time passed").  Accordingly, we overrule B.S.'s third and final assignment of error.

## VI. Disposition

{¶ 29}  Based on the foregoing reasons, the trial court did not abuse its discretion in denying B.S.'s motion for involuntary dismissal, there was competent, credible evidence to support the granting of the civil protection order, and the trial court did not abuse its discretion in setting the duration of the civil protection order.  Having overruled B.S.'s three assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations and Juvenile Branch.

*Judgment affirmed.*

TYACK and SADLER, JJ., concur.