[Cite as *P.B. v. M.H.*, 2026-Ohio-2086.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| P.B., | : | |
| Plaintiff-Appellee, | : | |
| | | No. 115702 |
| v. | : | |
| M.H., | : | |
| Defendant-Appellant. | : | |

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** June 4, 2026

Civil Appeal from the Cuyahoga County Court of Common Pleas
Domestic Relations Division
Case No. DV-25-403864

### *Appearances:*

Stafford Cruz Law Company and Kelley R. Tauring, *for appellee.*

M.H., *pro se.*


EILEEN T. GALLAGHER, P.J.:

{¶ 1} Appellant M.H. ("M.H.") challenges the judgment of the trial court granting a domestic-violence civil protection order ("DVCPO") in favor of appellee P.B. ("P.B."). He raises three assignments of error for review:

1. The trial court erred and abused its discretion in refusing to consider evidence submitted by way of Respondent's Motion to Dismiss.

2. The trial court erred and abused its discretion in finding that the credible evidence of record was sufficient to support the granting of the protective order.

3. The trial court erred and abused its discretion in upholding the restrictions of the protective order prohibiting all communication with the Petitioner and prohibiting the Respondent from owning or possessing firearms.

{¶ 2} After a thorough review of the applicable law and facts, we find that (1) the trial court did not err in declining to consider unsworn evidence attached to M.H.'s motion to dismiss, (2) there was sufficient evidence to support the issuance of the DVCPO, and (3) the trial court did not abuse its discretion in upholding the restrictions set forth in the DVCPO. We overrule the assignments of error and affirm the judgment of the trial court.

## I. Factual and Procedural History

{¶ 3} P.B. and M.H. were married and had three children together. Since 2021, the parties have been engaged in contentious divorce proceedings. At one point during the pendency of the divorce case, the parties entered into an agreed judgment entry ("AJE") that outlined each party's parenting time, acknowledging a week on/week off parenting schedule. The AJE restrained M.H. from approaching or entering P.B.'s residence "except to exercise parenting time." M.H. construed this phrase to mean that he was permitted to enter P.B.'s home, even when she was not at home, as long as he was exercising his parenting time. He did so on multiple occasions, including times when P.B. was not at home.

{¶ 4} Following one of these instances, P.B. filed a petition for a DVCPO pursuant to R.C. 3113.31. The court held an ex parte hearing and ultimately issued a DVCPO. M.H. was served with the petition and moved to dismiss the petition and terminate the ex parte DVCPO, arguing that P.B. could not establish any factual or legal grounds for a DVCPO. M.H. later filed an amended motion to dismiss, denying the allegations and offering factual context regarding the parties' interactions.

{¶ 5} The magistrate held a full hearing where P.B. testified and presented exhibits. M.H. also testified but did not present any exhibits. Following the hearing, the magistrate issued the DVCPO, effective for two years. The order prohibited M.H. from going to P.B.'s residence, precluded any communication with her, and restricted his possession of firearms. The trial court adopted the decision of the magistrate.

{¶ 6} M.H. filed objections to the trial court's adoption of the magistrate's decision:

> 1. The text messages do not constitute domestic violence as defined in R.C. 3113.31 when taken in context under the facts of this case and are too remote in time to support the issuance of the DVCPO;
>
> 2. Calling petitioner horrible names does not constitute domestic violence or a threat of imminent physical harm under the facts in this case;
>
> 3. Petitioner's unsupported allegation of arm twisting over two years prior to the petition for a protective order, which was made for the first time at the full hearing, is not credible and too remote to serve as the basis of a DVCPO;
>
> 4. The magistrate (impermissibly) ignored the evidence [submitted with] Respondent's Motion establishing that Petitioner admitted that

Respondent has never been violent to her or threatened her with violence after the date of the alleged violence and impeaching Petitioner's credibility;

5. The magistrate's findings of fact related to Respondent's alleged violation of the court's order of February 8, 2024 cannot serve as a basis for a finding that the Respondent has committed domestic violence and cannot serve as a grounds for the issuance of a DVCPO; and

6. The restrictions imposed by the DVCPO are improperly and baselessly overbroad and restrictive in that there is no basis to restrict Respondent's ownership or possession of firearms or to restrict his ability to communicate regarding the minor children.

{¶ 7} M.H. later filed supplemental objections that added citations to the hearing transcript; he also attached several exhibits to his filing that had not been presented at the hearing.

{¶ 8} The trial court conducted an independent review of the magistrate's decision and addressed the objections. In its journal entry adopting the magistrate's decision and overruling the objections, the court noted that M.H. had attempted to include additional evidence with his supplemental objections. The court found that under Civ.R. 65.1, it was unable to review evidence beyond what was submitted at the full hearing. The trial court further found that the testimony and evidence presented supported a finding of domestic violence for purposes of granting the DVCPO. The court overruled all of M.H.'s objections relating to the issuance of the order.

{¶ 9} In overruling M.H.'s objection regarding the scope of the DVCPO, the court stated as follows:

Respondent does not respect orders from this Court, and he does not respect the sanctity of Petitioner's residence. His actions, combined with the threatening text messages to Petitioner, and an ongoing, extended, contentious divorce proceeding, are enough for this Court to uphold the restriction on Respondent's possession and usage of firearms, ammunition, and deadly weapons.

Similarly, because Respondent cannot communicate with Petitioner in a healthy manner, the Court also upholds the restriction on Respondent's ability to directly communicate with Petitioner, even regarding the children.

{¶ 10} M.H. then filed the instant appeal.

## II. Law and Analysis

## A. Consideration of Evidence From Motion to Dismiss

{¶ 11} M.H. argues that the trial court erred in overruling his objections where it did not consider the evidentiary materials attached to his motion to dismiss. M.H. had moved to dismiss P.B.'s petition and terminate the ex parte DVCPO. Within the motion, he disputed the allegations in the petition and offered his own explanations and additional circumstances. Attached to the motion were the AJE, text messages between the parties, three flash drives, two judgment entries from the divorce proceeding, and two police reports from the University Heights Police Department.

{¶ 12} The trial court properly declined to consider evidence beyond that presented at the full hearing. R.C. 3113.31 does not define the term "full hearing"; the statute only directs that the court "proceed as in a normal civil action." Several courts have held that "'the words "full hearing" as used in R.C. 3113.31 mean the same thing as the word "trial" as used in the Civil Rules.'" *Spigos v. Spigos*, 2004-

Ohio-757, ¶ 15-16 (10th Dist.), quoting *Stanton v. Guerrero*, 1994 Ohio App. LEXIS 3794, *2 (2d Dist. Aug. 31, 1994). "A 'full hearing' is 'one in which ample opportunity is afforded all parties to make, by evidence and argument, a showing fairly adequate to establish the propriety or impropriety of the step asked to be taken.'" *Solon v. Geiger*, 2006-Ohio-6032, ¶ 13 (8th Dist.), quoting *Deacon v. Landers*, 68 Ohio App.3d 26, 29-30 (1990).

{¶ 13} The Ohio Supreme Court has held that the trial court erred in considering an appellee's answer as evidence in its decision of whether to grant a petition for a protection order, stating that "[t]he only admissible evidence presented by the parties at the hearing that the court could consider in its decision was the testimony of [petitioner and respondent]." *Felton v. Felton*, 79 Ohio St.3d 34, 43 (1997), citing *State ex rel. Copeland v. State Med. Bd.*, 107 Ohio St. 20 (1923), paragraph two of the syllabus. The *Felton* Court further stated that "[a] pleading is not admissible into evidence at a hearing to prove a party's allegations and must not be considered as evidence by the court." *Id.* See also *M.J.W. v. T.S.*, 2019-Ohio-3573, ¶ 22 (8th Dist.) (noting the petition is not evidence to be considered at the full hearing).

{¶ 14} Moreover, Civ.R. 65.1, governing civil protection orders, does not provide for the taking of additional evidence. This differs from Civ.R. 53, regulating proceedings before magistrates, which allows the trial court to "hear a previously-referred matter, *take additional evidence*, or return a matter to a magistrate." (Emphasis added.) Civ.R. 53(D)(4)(b). Accordingly, the trial court had no authority

to review evidence beyond that presented at the full hearing and could not consider the arguments or exhibits in M.H.'s motion to dismiss when ruling on M.H.'s objections.

{¶ 15} Even if it were appropriate to consider prior filings, M.H.'s motion contained unsworn statements, did not offer an affidavit, and failed to authenticate the exhibits. *See Patel v. Bellaire*, 2014-Ohio-880, ¶ 39 (7th Dist.) (noting that an unsworn document attached to a motion need not be accepted as evidence).

{¶ 16} M.H. chose not to present any of the exhibits from the motion at the hearing. M.H. had the chance to, and did, question P.B. during the full hearing. He likewise had the opportunity to present evidence in opposition to P.B.'s assertions but did not do so beyond his own testimony. Because the exhibits to the motion were not presented at the hearing, P.B. did not have an opportunity to question, examine, or clarify them. It would have been entirely inappropriate for the court to consider the arguments and exhibits presented in M.H.'s motion to dismiss. The trial court properly overruled M.H.'s objection.

{¶ 17} M.H.'s first assignment of error is overruled.

## B. Sufficiency of the Evidence

{¶ 18} In his second assignment of error, M.H. argues that there was not sufficient credible evidence of record to support the granting of the protective order. "To obtain a DVCPO under R.C. 3113.31, the petitioner must establish by a preponderance of the evidence, 'that petitioner or petitioner's family or household members are in danger of domestic violence.'" *R.E.S. v. M.J.M*, 2025-Ohio-546, ¶

15 (8th Dist.), quoting *Croone v. Arif*, 2014-Ohio-5546, ¶ 18 (8th Dist.), citing *Felton,* 79 Ohio St.3d at paragraph two of the syllabus. "'Preponderance of the evidence means the greater weight of the evidence, or evidence that leads the trier of fact to find that the existence of a contested fact is more probable than its nonexistence.'" *Id.*, quoting *id.*, citing *State v. Stumpf*, 32 Ohio St.3d 95, 102 (1987).

{¶ 19} "The decision to grant a protection order lies within the discretion of the trial court and 'will not be reversed absent an abuse of that discretion.'" *M.L.H. v. S.R.S.,* 2025-Ohio-5860, ¶ 20 (8th Dist.) quoting *R.E.S.* at ¶ 18, citing *E.A. v. A.A.*, 2024-Ohio-2807, ¶ 37 (8th Dist.). "A court exercising its judgment, in an unwarranted way, in regard to a matter over which it has discretionary authority" constitutes an abuse of discretion. *Johnson v. Abdullah*, 2021-Ohio-3304, ¶ 35.

{¶ 20} With respect to the issuance of a DVCPO, the question on review becomes "'whether there was sufficient credible evidence to support a finding that the respondent had engaged in acts or threats of domestic violence.'" *C.A.P. v. M.D.P.,* 2021-Ohio-3030, ¶ 22 (8th Dist.), quoting *Abuhamda-Sliman v. Sliman*, 2005-Ohio-2836, ¶ 10 (8th Dist.). "We must be mindful that when applying the abuse of discretion standard, 'we should not substitute our judgment for that of the trial court.'" *T.C. v. R.B.C.*, 2025-Ohio-1544, ¶ 10 (8th Dist.), quoting *Mills v. Mills*, 2025-Ohio-452, ¶ 28 (8th Dist.), citing *Martin v. Martin*, 18 Ohio St.3d 292 (1985).

{¶ 21} R.C. 3113.31(A)(1)(a) defines "domestic violence," in pertinent part, as the occurrence of one or more of the following acts against a family or household member:

(i) Attempting to cause or recklessly causing bodily injury;

(ii) Placing another person by threat of force in fear of imminent serious physical harm or committing a violation of section 2903.211 or 2911.211 of the Revised Code;

{¶ 22} R.C. 2903.211(A)(1) governs the offense of menacing by stalking, and it provides, in relevant part "No person by engaging in a pattern of conduct shall knowingly cause another person to believe that the offender will cause physical harm to the other person . . . or cause *mental distress* to the other person[.]" (Emphasis added.)

{¶ 23} At the full hearing, P.B. testified that, on more than one occasion, M.H. entered her home — sometimes while she was not there — and refused to leave. P.B. further testified that M.H. had once twisted her arm, called her a c*nt on multiple occasions, and said that she was "so f*cking dead" via text messages. He further took her vehicle without her permission and left other vehicles in her driveway.

{¶ 24} M.H. argues that the evidence was not sufficient to support the trial court's issuance of the DVCPO because seven-month-old text messages could not serve as a basis for the issuance of a protective order and even if they could, the text messages did not constitute a threat. He contends that stating to P.B. that she was "dead" in a text message was never meant as a threat of physical violence. Rather, M.H. contends that he was solely conveying his intent to move to hold P.B. in contempt for violating a court order regarding the children.

{¶ 25} M.H. further argues that the protection order cannot be based upon his visits to P.B.'s home because all of the visits were made with her consent or at her invitation. If there were any uninvited visits, he asserts that they did not occur during the week that P.B. alleged. And most importantly, M.H. maintains that his visits to P.B.'s home did not violate the terms of the AJE. He argues that he believed in good faith that he was permitted to enjoy parenting time with the children at P.B.'s house for a reasonable duration and at reasonable times.

{¶ 26} Finally, M.H. argues that calling P.B. names cannot constitute domestic violence and that her claim for physical violence from two years ago is too remote. He asserts that P.B. lacked credibility regarding the allegation of physical violence.

{¶ 27} """The statutory criterion to determine whether or not to grant a civil protection order pursuant to R.C. 3113.31 is the existence or threatened existence of domestic violence.""" *R.E.S.*, 2025-Ohio-546, at ¶ 17 (8th Dist.), quoting *Tyler v. Tyler*, 2016-Ohio-7419, ¶ 18 (2d Dist.), quoting *Thomas v. Thomas*, 44 Ohio App.3d 6, 8 (10th Dist. 1988). "Explicit threats of domestic violence are not required in order to support the issuance of a civil protection order. Instead, statements, conduct, and actions, taken with all surrounding facts and circumstances, can constitute a threat." *R.E.S.* at ¶ 17, citing *J.S. v. L.S.*, 2022-Ohio-2485 (10th Dist.). """A court must take everything into consideration when determining if a respondent's conduct constitutes a pattern of conduct, even if some of the person's actions may not, in isolation, seem particularly threatening.""" *M.J.W.*, 2019-Ohio-

3573, at¶ 30 (8th Dist.), quoting *Guthrie v. Long*, 2005-Ohio-1541, ¶ 12 (10th Dist.),

quoting *Miller v. Francisco*, 2003-Ohio-1978 (11th Dist.).

{¶ 28} Here, the evidence was sufficient to support a finding that M.H.'s

conduct caused mental distress to P.B. in violation of R.C. 2903.211 (menacing by

stalking).  R.C. 2903.211(A)(1) defines mental distress as any of the following:

> (a) Any mental illness or condition that involves some temporary substantial incapacity;

> (b) Any mental illness or condition that would normally require psychiatric treatment, psychological treatment, or other mental health services, whether or not any person requested or received psychiatric treatment, psychological treatment, or other mental health services.

We have recognized that "a court may issue a DVCPO based on evidence of menacing

by stalking . . . [and that offense] may be established absent an 'act that placed

another person by the threat of force in fear of imminent serious physical harm.'"

*C.A.P.*, 2021-Ohio-3030, at ¶ 21 (8th Dist.).

{¶ 29} M.H. disputes P.B.'s testimony at the full hearing and questions her

credibility.  He argues that "the credible evidence of record" was not sufficient to

support the granting of the protection order.  However, a claim of insufficiency

questions "whether the evidence is legally sufficient to support a verdict as a matter

of law." *State v. Parker*, 2022-Ohio-1237, ¶ 7 (8th Dist.), citing *State v. Thompkins*,

78 Ohio St.3d 380, 386 (1997).  "Credibility of the witnesses or evidence is

immaterial under the sufficiency analysis; the appellate court must defer to the

credibility determinations of the trier of fact and only reviews issues of law." *Id.*

Thus, we will not consider the credibility of a witness when reviewing whether there

was sufficient evidence to support the lower court's findings. *In re C.A.*, 2015-Ohio-4768, ¶ 51 (8th Dist.), citing *State v. Williams*, 2013-Ohio-1181, ¶ 27 (8th Dist.). As such, "[t]he testimony of one witness, if believed by the factfinder, is enough." *Id.*, citing *State v. Adams*, 2014-Ohio-4233, ¶ 14 (5th Dist.). It is well established that a "finder of fact is free to believe some, all, or none of a witness's testimony." *Melenick v. McManamon*, 2010-Ohio-1051, ¶ 28 (8th Dist.), citing *State v. Ghaster*, 2009-Ohio-2134, ¶ 46 (8th Dist.).

{¶ 30} M.H.'s interpretation of the AJE's reference to "parenting time" seems to be deliberately obtuse. The AJE states in pertinent part:

> IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the Plaintiff Menachem M.H., and the Defendant Pegah P.B., shall continue to exercise parenting time with the minor children on a week-on-week-off basis, exchanging the children on Sundays at 10:30 a.m. The *person ending parenting time* shall be responsible for delivering the children to the *parent commencing parenting time.*

(Emphasis added.)

{¶ 31} The AJE further restrained M.H. from "approaching, entering, living, and/or residing" in P.B.'s residence "except to exercise parenting time." "Parenting time" is not specifically defined in the Revised Code, but a "parenting time order" is defined as "an order establishing the amount of time that a child spends with the parent who is not the residential parent or the amount of time that the child is to be physically located with a parent under a shared parenting order." R.C. 3109.051(O)(4). The clear implication is that "parenting time" is conducted with each individual parent and not during the other parent's time. The AJE would not

refer to a "person ending time" and a "parent commencing time" if it intended for either parent to exercise parenting time during the other parent's scheduled time — in this case, every other week. Consequently, each time M.H. entered P.B.'s house under the guise of exercising parenting time he violated the AJE.

{¶ 32} At the full hearing, P.B. testified that M.H. had repeatedly come to her house when she asked him not to and sometimes would "just sit there and not leave." (Tr. 86 and 90.) While he was there, he would remove items from the home and record her when she was present.

{¶ 33} At the full hearing, M.H. admitted that he had gone in P.B.'s residence when she was not present but the children were. (Tr. 35.) He further acknowledged that P.B. had told him not to do that and admitted that he did not leave P.B.'s residence when she requested. (Tr. 27 and 40.) While M.H. maintained that he had not gone to P.B.'s house uninvited in the prior year, the fact that he continued to insist that the AJE could be interpreted to allow him to do so is troubling.

{¶ 34} P.B. testified that she feels unsafe and jittery; she stated that she does not sleep and is unable to function. (Tr. 96 and 102.) While M.H. argues that the past physical violence and the threatening text messages were too remote to support a DVCPO, the history between the parties is instructive as to the reasonableness of P.B.'s fear. In determining whether to grant a DVCPO, a court may consider evidence in light of the history between petitioner and respondent. *M.R. v. T.R.*, 2016-Ohio-3493, ¶ 11 (9th Dist.), citing *Bowman v. Bowman*, 2014-Ohio-2851, ¶ 10 (9th Dist.), citing *State v. Payne*, 2008-Ohio-5447, ¶ 10 (9th Dist.). *See also T.S. v.*

*B.S.,* 2018-Ohio-4987, ¶ 24 (10th Dist.) ("A court should determine whether the fear is reasonable with reference to the history between the parties."). "'Thus, past acts of domestic violence can establish that the petitioner has a genuine, reasonable fear of violence in the present circumstances.'" *C.T. v. N.Y.,* 2023-Ohio-3029, ¶ 30 (10th Dist.) quoting *Crabtree v. Dinsmoor,* 2013-Ohio-5797, ¶ 13 (10th Dist.).

{¶ 35} In viewing the totality of the evidence presented at the full hearing, we find that there was sufficient credible evidence to support a finding that the DVCPO was necessary to protect P.B. from domestic violence, i.e., menacing by stalking pursuant to R.C. 2903.211. Accordingly, M.H.'s second assignment of error is overruled.

## C. Restrictions of DVCPO

{¶ 36} In his third assignment of error, M.H. argues that the scope of the DVCPO is overly broad because it subjects him to restrictions that are not justified by the evidence presented in this matter. He first contends that the order unreasonably and baselessly prohibits him from owning or possessing firearms despite the fact that there were no allegations involving a firearm. M.H. notes that he "is a recreational target shooter who enjoys engaging in shooting sports as a hobby." He maintains that he has never threatened P.B. with a firearm nor has he ever used a firearm impermissibly.

{¶ 37} We have held that "[b]ecause R.C. 3113.31 expressly authorizes the courts to craft protection orders that are tailored to the particular circumstances, it follows that the trial court has discretion in establishing the scope of a protection

order and that judgment ought not be disturbed absent an abuse of discretion." *Abuhamda-Sliman*, 2005-Ohio-2836, at ¶ 9 (8th Dist.).

{¶ 38} As part of a protection order, the court may "grant any other relief that the court considers equitable and fair." R.C. 3113.31(E)(1)(h); *Felton*, 79 Ohio St.3d at 38. "A trial court can include a prohibition about firearms in an order if it finds, after a full hearing, that the order is equitable, fair, and necessary to bring about a cessation or prevention of domestic violence." *Snell v. Snell*, 2010-Ohio-2245, ¶ 35 (5th Dist.). Federal law precludes M.H.'s possession of firearms. *See* 18 U.S.C. 922(g)(8)(B) (precluding any person "who is subject to a court order that restrains such person from harassing, stalking, or threatening an intimate partner" to possess a firearm or ammunition.). The trial court was within its discretion to incorporate the remedy provided in the federal law. *See Wilson v. Wilson*, 2023-Ohio-4243, ¶ 38 (12th Dist.) ("Although the General Assembly has not made it a requirement that any respondent who is subject to a DVCPO be restricted from possessing a firearm, we find no error in the trial court's decision to include the firearm restrictions in the DVCPO at issue here.").

{¶ 39} In light of the evidence presented at the full hearing, we find that the scope of the protection order was tailored to prevent P.B. from suffering from the mental distress inflicted by M.H. The trial court did not abuse its discretion in precluding M.H. from owning or possessing firearms.

{¶ 40} M.H. further contends that the DVCPO's blanket prohibition on all communication between the parties disrupts parenting coordination and harms his

relationship with the children. He asserts that he has been unable to attend events involving the children and cannot confirm their safety because P.B. has told the children not to engage with him.

{¶ 41} Again, we find that the court's issuance of the DVCPO was tailored to prevent P.B. from future harm or mental distress inflicted by M.H. Given M.H.'s past actions in communicating with P.B., including sending her threatening text messages, and his disregard of court orders, we cannot find that the trial court abused its discretion in completely precluding M.H. from communicating with P.B.

{¶ 42} Finally, M.H. contends that the requirement that he vacate any space where P.B. is present is particularly burdensome because they reside in "a close-knit Orthodox Jewish community with limited shared public spaces." We note that issues with attending events for the children and shared public spaces in a close community were not raised in M.H.'s objections to the DVCPO. Accordingly, these arguments are being raised for the first time on appeal. It is well settled that a party is not permitted to raise new arguments and legal issues for the first time on appeal, and the failure to raise an issue in the trial court precludes that issue from appellate review. *S.H.B. v. M.W.L.*, 2021-Ohio-3929, ¶ 18 (8th Dist.), citing *State v. Almazan*, 2021-Ohio-1718, ¶ 8 (8th Dist.), citing *Miller v. Cardinal Care Mgt.*, 2019-Ohio-2826, ¶ 23 (8th Dist.), citing *Cleveland Town Ctr. L.L.C. v. Fin. Exchange Co. of Ohio, Inc.*, 2017-Ohio-384 (8th Dist.) (appellate courts "will not consider a question not considered or decided by the lower court").

{¶ 43} M.H.'s final assignment of error is overruled, and the judgment of the trial court is affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court, domestic relations division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

EILEEN T. GALLAGHER, PRESIDING JUDGE

EMANUELLA D. GROVES, J., and
MARY J. BOYLE, J., CONCUR