JOURNAL ENTRY AND OPINION *Page 3 
{¶ 1} Plaintiff-appellant, Antonio Calabrese ("Antonio"), appeals the decision of the Cuyahoga County Court of Common Pleas, Division of Domestic Relations, to award defendant-appellee, Linda Calabrese ("Linda"), modified spousal support and attorney fees, and the trial court's finding of contempt and award of attorney fees. For the reasons stated herein, we affirm.
 {¶ 2} The parties to this action were divorced on June 28, 2002. At that time, the parties had been married for 37 years and had seven children, one of whom was still a minor. The divorce decree adopted the terms of a separation agreement. Pursuant to the separation agreement, Antonio agreed to pay spousal support in the amount of $4,000 per month commencing June 2002, which the domestic relations court retained jurisdiction to modify. There was no child support order. At the time of the divorce, Antonio's annual income was $57,600 and Linda's annual income was $8,160.
 {¶ 3} As relevant to this appeal, the terms of the separation agreement also required Antonio to provide continuing health coverage for Linda and to obtain a ten-year term life insurance policy in the amount of $250,000 to secure his spousal support, with Linda named as the irrevocable beneficiary thereon. Antonio retained all interest in the parties' companies and assumed all liabilities associated with them.
 {¶ 4} On November 22, 2002, Antonio filed his first motion to modify spousal support, asserting that his business had taken a downhill turn since the finalization of *Page 4 
the divorce and he was unable to pay all of his bills or afford his spousal support. This motion was denied by the trial court.
 {¶ 5} Antonio filed a second motion to modify spousal support on November 30, 2004. Antonio claimed that his financial position was in a downward tailspin and he was no longer able to meet his spousal support obligations. Antonio requested that the court modify his support obligations to "be more in line with his financial ability to pay."
 {¶ 6} Linda filed a motion for order to show cause claiming Antonio was in noncompliance with the divorce decree, and she also moved for attorney fees. More specifically, Linda claimed Antonio had failed to make any spousal support payments since September 2004; had failed to continue to provide her health insurance; and had failed to obtain the ten-year term life insurance to secure his spousal support obligation, with Linda named as the irrevocable beneficiary thereon. Other assertions of noncompliance were also made, which are not relevant to this appeal.
 {¶ 7} The matter was heard before a magistrate on December 30, 2005. A review of the hearing transcript reflects that the companies in which Antonio retained all interest pursuant to the divorce decree were still in existence but were largely inactive. Antonio's primary business, Calabrese Construction Company, ceased activity in 2002 or early 2003. Antonio claimed that after the divorce, the company "just went down." He testified that Calabrese Construction Company had liabilities *Page 5 
at the end of 2002 of about $500,000 that had yet to be paid. Antonio stated that this was a debt of the corporation, not his personal debt.
 {¶ 8} Around the same time Calabrese Construction Company ceased activity, a company named TLC Construction Company ("TLC") was incorporated. The company was owned by Antonio's girlfriend, Lieselotte Flos. Antonio cohabited with Ms. Flos in a home she owned. However, the home was purchased, in part, with funds received from Antonio's pension plan in the amount of $100,000. Antonio stated the funds were provided to Ms. Flos as reimbursement for money she had spent on his business.
 {¶ 9} Antonio conceded that TLC was at the same location where Calabrese Construction Company had been located. TLC used equipment owned by the Tony Calabrese Construction Company. There was some contradiction in the testimony as to whether any money was paid for the lease of this equipment. Antonio worked as a construction manager for TLC and did the same type of work at TLC that he had previously done.
 {¶ 10} Testimony was introduced that the gross receipts for TLC were just over $400,000 in 2003 and reduced to just over $200,000 in 2004. Many financial records were not available for review, and several discrepancies were not accounted for at the hearing.
 {¶ 11} Antonio testified that between April 2004 and November 2004, he was paid $750 per week. He stated that his work is a seasonal type of employment and *Page 6 
that during the months he is unemployed, he receives compensation of $190 per week. He indicated that he made an annual salary of $27,800. He claimed he did not have any other sources of income. Antonio further stated he had monthly expenses of $1,811. He testified that TLC paid for a lease on his vehicle. No documentation was provided to substantiate the amount of Antonio's income and expenses for 2003, 2004, or 2005.
 {¶ 12} Antonio admitted that he had not paid any spousal support to Linda since September 2004. He also admitted that he failed to maintain health insurance coverage for Linda. However, he indicated that he no longer received health insurance coverage from TLC. Ms. Flos confirmed that TLC no longer provided health coverage. Antonio also admitted that he allowed the life insurance coverage to expire on December 17, 2004. He stated he could no longer afford to maintain this coverage.
 {¶ 13} Linda testified that she had been working for Howard Hanna, a real estate company, since 1994. She testified that she earned between $8,000 and $9,000 in 2003 and a comparable amount in 2004. She stated she had been working in real estate since 1986. She testified she was unable to type because of arthritis in her hand. She felt her age and the fact that she has arthritis were inhibiting her ability to obtain other employment. She had a monthly mortgage expense of $1,300 per month and testified she had total monthly expenses in excess of $3,000 per month. Here again, no documentation was provided. Plaintiff's *Page 7 
counsel argued that assuming Linda's expenses were $3,000 per month, she did not need $4,000 per month from Antonio. Linda stated she had not been paid spousal support since September 2004.
 {¶ 14} The magistrate issued a decision with findings of fact and conclusions of law on March 23, 2006. The magistrate granted the motion to modify child support and found that Antonio's spousal support obligation was to be reduced from $4,000 per month to $2,000 per month to be applied retroactively to November 30, 2004. The magistrate found that Antonio was in contempt for failing to make any spousal support payments over a period of 16 months, and determined an arrearage of $38,000 as of December 31, 2005. However, the magistrate found Antonio was not in contempt for failing to continue health insurance coverage for Linda or to maintain her as a beneficiary of life insurance, because he had demonstrated an inability to pay for these coverages. The magistrate granted Linda's motion for attorney fees and awarded her $7,000 for her legal fees expended to enforce the order.
 {¶ 15} Both parties filed objections to the magistrate's decision. On June 27, 2006, the trial court overruled the objections and adopted the magistrate's decision in its entirety.
 {¶ 16} Antonio filed this appeal, raising two assignments of error for our review. Although the assignments raise issue with the magistrate's decision, we shall treat them as challenging the trial court's final ruling that was appealed herein and that *Page 8 
adopted the magistrate's decision. Antonio's first assignment of error provides the following:
 {¶ 17} "I. The magistrate abused her discretion and committed prejudicial error by failing to terminate appellant's current spousal support obligation."
 {¶ 18} In domestic relations matters, a trial court possesses broad discretion to determine spousal support issues, including spousal support modification. See Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 218. Therefore, a trial court's decision regarding the modification of spousal support will not be disturbed on appeal unless the trial court abused that discretion. Id. An abuse of discretion connotes that the trial court's attitude is unreasonable, arbitrary, or unconscionable. Id. at 219.
 {¶ 19} R.C. 3105.18 governs a trial court's authority to terminate or modify a spousal support order. In order for a trial court to modify the amount or terms of spousal support, the court must have jurisdiction to make the modification as provided in R.C. 3105.18(E). Here the parties do not dispute that the court has such jurisdiction. Indeed, the divorce decree authorized the court to modify the spousal support.
 {¶ 20} Once jurisdiction is established, the court must assess whether the circumstances of either party have changed. R.C. 3105.18(E). A change of circumstances, "includes, but is not limited to, any increase or involuntary decrease in the party's wages, salary, bonuses, living expenses, or medical expenses." R.C. *Page 9 3105.18(F). Further, a change in circumstances necessary to modify spousal support must be substantial. Tremaine v. Tremaine (1996),111 Ohio App.3d 703, 706, appeal not allowed 77 Ohio St.3d 1480.
 {¶ 21} Here again, the parties do not dispute that there has been a change in circumstances. The trial court found that there was a change in circumstances with respect to the caliber of projects Antonio worked on since the divorce. The court found that there was credible testimony that "in the past the company had larger projects such as major road construction, now it has smaller scale projects such as installing cement driveways and roadwork." The court also considered the fact that Antonio was older and had slowed down with respect to his various business entities. After considering the testimony concerning Antonio's income and expenses as well as the financial status of his business entities and TLC, the court found there had been a change of circumstances.
 {¶ 22} Once a trial court finds that there has been a change of circumstances, the court must then determine if spousal support is still necessary and, if so, in what amount. Kucmanic v. Kucmanic (1997),119 Ohio App.3d 609, 613, citing Bingham v. Bingham (1991),9 Ohio App.3d 191. In determining the appropriateness and reasonableness of the award, the trial court must look to the relevant factors listed in R.C.3105.18(C), which include the following:
 "(a) The income of the parties, from all sources, including, but not limited to, income derived from property divided, disbursed, or distributed under section 3105.171 of the Revised Code; *Page 10 
 "(b) The relative earning abilities of the parties;
 "(c) The ages and the physical, mental, and emotional conditions of the parties;
 "(d) The retirement benefits of the parties;
 "(e) The duration of the marriage;
 "(f) The extent to which it would be inappropriate for a party, because that party will be custodian of a minor child of the marriage, to seek employment outside the home;
 "(g) The standard of living of the parties established during the marriage;
 "(h) The relative extent of the education of the parties;
 "(i) The relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties;
 "(j) The contribution of each party to the education, training, or earning ability of the other party, including, but not limited to, any party's contribution to the acquisition of a professional degree of the other party;
 "(k) The time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience so that the spouse will be qualified to obtain appropriate employment, provided the education, training, or job experience, and employment is, in fact, sought;
 "(l) The tax consequences, for each party, of an award of spousal support;
 "(m) The lost income production capacity of either party that resulted from that party's marital responsibilities;
 "(n) Any other factor that the court expressly finds to be relevant and equitable." *Page 11 
 {¶ 23} In this case, the trial court reviewed the testimony provided concerning the above factors. In addition to finding a change with respect to the varying business entities and considering that Antonio was older and had slowed down, the court also found that the evidence showed the financial interests of Antonio and Ms. Flos were clearly intertwined. The court determined "based on the drop in gross receipts of TLC Corporation between 2003 and 2004, and after consideration of all of the factors of R.C. 3105.18(C), most notably, 3105.18(C)(1)(a), the income of the parties; (b) the relative earning abilities of the parties; and (c) the ages of the parties, * * * that spousal support should be reduced by one-half to $2,000 per month."
 {¶ 24} Antonio claims that this reduction in his spousal support obligation was not reasonable and that his spousal support obligation should have been terminated. We observe that Antonio's motion did not seek a termination of spousal support, but rather, Antonio requested that the court modify his support obligations to "be more in line with his financial ability to pay."
 {¶ 25} As the party seeking a modification in spousal support, Antonio maintained the burden of demonstrating that a reduction, or termination, was warranted. See Tremaine v. Tremaine (1996), 111 Ohio App.3d 703;Goldberg v. Goldberg, Cuyahoga App. Nos. 86588 and 86590,2006-Ohio-1948. Although Antonio provided testimony concerning his income and expenses as well as the financial status of the varying businesses, little documentation was provided to *Page 12 
substantiate this testimony, and in many instances, the record is incomplete.
After reviewing the record, we find that the trial court did not abuse its discretion by failing to terminate Antonio's spousal support. After weighing the factors in R.C. 3105.18 (C)(1), the trial court significantly reduced Antonio's spousal support payments. The court found that Antonio "had reason to know the extent of his cement business income when he entered into the Separation Agreement at the end of June 2002." The court did recognize the decline in the gross receipts for TLC from 2003 to 2004.
 {¶ 26} Antonio argues that his income has been significantly reduced since the time of the divorce decree. However, he failed to provide documentation to substantiate this claim. Again, Antonio had the burden of demonstrating that a reduction, or termination, was warranted. His argument that the trial court failed to determine his actual current income is wholly without merit in light of the fact that he failed to meet his burden of providing evidence to substantiate his income. Even so, the trial court did take into consideration the testimony that was provided. The trial court also considered Linda's financial position, which the testimony reflected was essentially unchanged since the time of the divorce.
 {¶ 27} Insofar as Antonio argues that the trial court should not have considered Ms. Flos's income, we do not find that any of her income was imputed to Antonio. Antonio also objects to the trial court's finding that their business interests *Page 13 
were financially intertwined. Upon our review, we find no abuse of discretion as to this finding, which is supported by the record.
 {¶ 28} A review of the record indicates that the trial court considered all relevant factors set forth in R.C. 3105.18(C)(1) and found that a reduction, not a termination, in spousal support was appropriate. Under the circumstances, this court finds that the lower court did not abuse its discretion by failing to terminate spousal support or in its determination to reduce Antonio's monthly spousal support obligation from $4,000 to $2,000 per month.
 {¶ 29} Antonio's first assignment of error is overruled.
 {¶ 30} Antonio's second assignment of error provides as follows:
 {¶ 31} "II. The magistrate abused her discretion and committed prejudicial error by finding the appellant in contempt for failing to comply with his spousal support obligation."
 {¶ 32} The trial court found that Antonio was in contempt for failing to make any spousal support payments "over a period of sixteen months while he was working." After retroactively applying the reduction in spousal support, the trial court found an arrearage of $38,000 as of December 31, 2005.
 {¶ 33} Antonio argues that he should not have been found in contempt of court for failure to pay spousal support because he was unable to pay the support amount. He further contends that the arrearage calculation exceeds his gross income during the pendency of the motions. *Page 14 
 {¶ 34} In Goldberg, supra, this Court set forth the standard for reviewing a finding of contempt of court, and stated as follows: "A reviewing court will not reverse the decision of the lower court in a contempt proceeding absent a showing of an abuse of discretion.Cherwin v. Cherwin, Cuyahoga App. No. 84875, 2005-Ohio-1999. Contempt is defined in general terms as disobedience of a court order. A prima facie case of contempt is established when the divorce decree is before the court along with proof of the contemnor's failure to comply with it.Dzina v. Dzina, Cuyahoga App. No. 83148, 2004-Ohio-4497. Once a prima facie case is shown, the burden shifts to the contemnor to present evidence of his inability to pay or any other defenses that may be available to him. Robinson v. Robinson (Mar. 31, 1994), Wood App. No. 93WD053."
 {¶ 35} We find that the trial court did not abuse its discretion when it found Antonio in contempt of court for failure to pay spousal support. Antonio conceded that he had not made any spousal support payments to Linda since September 2004. The record also reflects that Antonio was working during this time period. The trial court took into consideration the reduction in spousal support when calculating the arrearage. While Antonio complains of his inability to comply, we again find that Antonio failed to provide documentary evidence to substantiate his income and that the trial court's determination was supported by the record.
 {¶ 36} Antonio also argues that the court abused its discretion in awarding attorney fees to Linda. R.C. 3109.05(C) requires the trial court to impose reasonable *Page 15 
attorney fees on a party who is found in contempt of court for failure to make court-ordered child support payments. Specifically, the statute requires the trial court, in addition to any other penalty or remedy imposed, to "assess all court costs arising out of the contempt proceeding against the person and require the person to pay any reasonable attorney's fees of any adverse party, as determined by the court, that arose in relation to the act of contempt."
 {¶ 37} Here, Antonio was found in contempt of court for failing to pay his child support obligation as set forth in the divorce decree. Therefore, the trial court was required by R.C. 3109.05(C) to require Antonio to "pay any reasonable attorney's fees * * * as determined by the court." A review of the record reflects that the court found Linda was "entitled by law to recover her attorney's fees expended to enforce the order" and that the parties agreed that the fees should be "reduced to 35 hours at $200.00 per hour." We find the trial court did not err in granting Linda's motion for attorney fees and awarding her a reasonable amount of her requested attorney fees.
 {¶ 38} Antonio's second assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover from appellant her costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate be sent to said court to carry this judgment into execution. *Page 16 
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
 FRANK D. CELEBREZZE, JR., A. J., and MARY EILEEN KILBANE, J., CONCUR. *Page 1