[Cite as *Mills v. Mills*, 2025-Ohio-452.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

PAMELA M. MILLS,                    :

       Plaintiff-Appellee/            :
       Cross-Appellant,                              No. 113819

v.                                 :

PHILIP W. MILLS,                    :

       Defendant-Appellant,           :
       Cross-Appellee.

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** February 13, 2025

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Domestic Relations Division
Case No. DR-08-319500

---

### *Appearances:*

James P. Reddy, Jr., *for appellee/cross-appellant*.

Zashin & Rich Co., LPA, and Jonathan A. Rich, *for appellant/cross-appellee*.

MARY J. BOYLE, J.:

{¶ 1} Former spouses, appellant/cross-appellee, Philip W. Mills ("Husband"), and appellee/cross-appellant, Pamela M. Mills ("Wife"), appeal and

cross-appeal the judgment entry issued by the domestic relations court granting a modification of Husband's spousal-support obligation, finding Husband in contempt of court, and its award of attorney fees, raising the following assignments of error for review:

**Husband's Assignments of Error**

**Assignment of Error One:** The trial court erred and abused its discretion in failing to terminate spousal support and finding that the sum of $1,800.00 per month is a reasonable and appropriate spousal support order under [R.C. 3105.18].

**Assignment of Error Two:** The trial court erred in finding [Husband] in contempt of court.

**Wife's Cross-Assignments of Error**

**Cross-Assignment of Error One:** The trial court erred in reducing the amount of the monthly spousal support obligation.

**Cross-Assignment of Error Two:** The trial court erred in its award of attorney fees to [Wife].

{¶ 2} After careful review of the record and relevant case law, we affirm. We decline to find that the trial court abused its discretion. In the domestic relations arena, the court is generally given broad discretion in the fashioning of equitable relief under the specific facts and circumstances of each case. With this in mind, we do not substitute our judgment for that of the trial court and we affirm.

## I. Facts and Procedural History

{¶ 3} Husband and Wife were married in 1978, and three children were born of this marriage, who were emancipated at the time Wife initiated the divorce proceedings in 2008. The parties had been married for 31 years at the time their

divorce was finalized in 2009. The judgment entry of divorce, which incorporated the parties' separation agreement, provided that Husband is to pay Wife $4,000 per month, plus the 2% processing charge, as spousal support subject to termination upon Wife's death "remarriage or cohabitation with an unrelated individual, subject to further order of court — modifiable[.]"

{¶ 4} More than ten years later, Husband filed a motion to modify spousal-support, requesting the court to terminate or modify his $4,000 per month spousal support obligation to $0 because he intended on retiring from work in June 2020 to focus on his health and family. Husband averred, "In addition to having reached a reasonable age for retirement, I have been diagnosed with renal carcinoma and have recently undergone a radical nephrectomy after the cancer was found to be much more advanced than initially thought. [Wife] is aware of my diagnosis." (Motion, Oct. 9, 2019.) Wife opposed the motion.

{¶ 5} During the pendency of the proceedings, Husband stopped paying the $4,000 per month spousal-support order. As a result, Wife filed a show cause motion, seeking to find Husband in contempt for his failure to abide by their divorce decree. Wife averred that Husband "ceased paying spousal support in October 2020[.]" (Motion, Jan. 6, 2021.) Wife also filed a motion to compel and a motion for attorney's fees because of Husband's deficient reply to Wife's discovery requests and the magistrate's discovery orders. According to Wife, Husband's response was wholly inadequate and included completely redacted income-tax returns.

{¶ 6} The matter proceeded to a trial before the magistrate on four separate dates, starting in March 2021 and ending in July 2021. The following relevant evidence was presented.

{¶ 7} During the time of trial, both Husband and Wife were 66 years old. At the time of the divorce, Husband was employed with Ben Venue Laboratories in Ohio as an automation manager and earned approximately $115,000 per year. Husband was laid off by Ben Venue Laboratories in 2013 and relocated to Boston, Massachusetts in 2014 to take a job with Shire Pharmaceuticals. He continued to work at Shire until his retirement on August 28, 2020. At the time of retirement, Husband earned $260,000. Husband moved back to Cleveland in December 2020 with his current wife where they bought a house for $445,000. Husband's current wife ("Current Wife") is 43 years old, employed, and pays all the household expenses. Current Wife earned $161,106 in 2020. Current Wife and Husband married in 2016.

{¶ 8} Husband testified that in 2018, he began to experience serious health issues, in which he took a ten-week disability leave from work. Then in June 2019, he was diagnosed with stage 3 renal cell carcinoma and had his left kidney removed in September 2019. In January 2020, Husband was diagnosed with stage 3 chronic kidney disease. Additionally, Husband had a basal cell carcinoma removed and a skin graft performed in March 2020. Husband further testified that he decided to retire because of his age, health, the stress of his job, and the distance from family. Husband has the following retirement and investment accounts: Edward Jones

IRA, balance on January 29, 2021 — $304,216; Takeda Savings 401(k) account, as of December 31, 2020 — $295,346; Retirement Plan for Boehringer Ingelheim Corporation fka Ben Venue Laboratories, Inc. 401(k), $133,500 — unknown monthly amount of pension, anticipated $5,820 per year; Social Security monthly benefit — amount of $2,589; and United Kingdom pension/social security equivalent — unknown monthly amount.

{¶ 9} Husband further testified that he elected to not receive his Social Security retirement benefits or withdraw from his pensions, IRA, or 401(k). Husband is waiting until age 70 to maximize his benefit. He is able to retire with no income because his current wife is supporting him. According to Husband, he informed Wife in October 2019 of his intent to retire so that she could prepare for the change in financial circumstances that would result from his retirement.

{¶ 10} Wife testified that she is a real estate agent with Howard Hanna. She earned $6,656 in 2018 and $16,850 in 2019. Previously, Wife worked as the Creative Programming Director for BAY arts in Bay Village, where she earned $22,000 per year. She resigned from this position in February 2020 because she was physically no longer able to lift and move heavy objects required by this job. According to Wife, she elected not to receive income from her IRA, 401(k), Social Security, or pension accounts. Wife also never remarried or cohabited with an unrelated individual. Wife sold the marital home and downsized by purchasing her current home. According to Wife, she paid cash for her home, which was $72,000

and does not have a mortgage.  Wife also testified that she has "to do a lot of work" on her house.  (Tr. 41.)

{¶ 11}  Wife has the following retirement and investment accounts:  Putnam Investments, balance on December 31, 2019 — $6,605; Capital Group Simple IRA, balance on December 31, 2019 — $5,481; Capital Group Rollover IRA, balance on December 31, 2019 — $133,641; Retirement Plan for Boehringer Ingelheim Corporation fka Ben Venue Laboratories, Inc. 401(k) — not receiving pension at this time but anticipated around $5,000; and Social Security, potential monthly benefit of $586.  Wife also received an inheritance from her mother in the amount of $124,000.  Wife used $16,000 of her inheritance to renovate her home.  Wife further testified that Husband stopped paying his monthly spousal-support obligation so she had to lower her monthly expenses, including gifts for their children and grandchildren.

{¶ 12}  Certified Financial Planner William Hawke ("Hawke") testified on behalf of Husband.  Hawke testified that he prepared a report outlining Husband's income sources.  In preparing the report, Hawke reviewed Husband's pension, other retirement investments, and Social Security options.  Hawke used the $45,916 figure provided by Husband as the amount of Husband's yearly living expenses in each of his projections.  In one scenario, Husband has $5,820 of pension income for the year and approximately $46,000 in expenses projecting Husband with $40,000 negative cash flow.  In another scenario, Husband would be receiving his Social Security benefit, which would be approximately $28,000, in addition to his pension

making his total yearly cash flow approximately $34,000. In the last scenario, if Husband took out $12,000 per year from his investments in addition to his pension and Social Security, Hawke testified that Husband's cash inflow would be approximately $54,000. Hawke testified that he was not aware of Current Wife's salary and did not include the additional household income provided by Current Wife in the analysis. Hawke was also not aware that Current Wife pays all the household expenses. Hawke further testified that Husband voluntarily chose not to withdraw from his investments, not elect his Social Security benefits, and not commence his retirement benefits.

{¶ 13} Following the conclusion of the trial, the magistrate allowed the parties to submit written closing arguments, which both parties filed. The magistrate then issued a decision that (1) reduced the spousal support award to $1,800 per month after finding a change in circumstances (Husband has retired and has major health issues with his kidney) not contemplated at the time of the divorce and considering the required statutory factors; (2) found Husband in contempt of court for unilaterally deciding to stop paying the spousal-support order of $4,000 per month; (3) denied Wife's request for attorney fees as it related to Husband's discovery issues; (4) and awarded Wife $3,000 in attorney fees for the contempt proceedings.

{¶ 14} Both parties filed objections to the decision. The trial court overruled both Husband's and Wife's objections and adopted the magistrate's decision in its entirety, with the one modification of ordering CJFS-OCSS to calculate the

arrearages and notify the parties of this arrearages in writing. The court gave Husband 45 days to pay the arrearages in full after receiving notification from CJFS-OCSS.

{¶ 15} Both Husband and Wife appealed from this order in *Mills v. Mills*, 2022-Ohio-4639 (8th Dist.), which we dismissed for lack of final appealable order because the arrearages amount was undetermined. Thereafter, Wife filed a motion to determine arrearages and a judgment entry was issued by the trial court, stating that Husband's arrearages amount is $60,026.13 (Judgment entry, Apr. 2, 2024).

{¶ 16} Husband and Wife now appeal again, each raising two assignments of error for review. We will combine our discussion because their assigned errors relate to the post-decree modification of spousal support.

## II. Law and Analysis

### A. Standard of Review

{¶ 17} We review the propriety of the trial court's determinations in a domestic relations case under an abuse-of-discretion standard. *Booth v. Booth*, 44 Ohio St.3d 142, 144 (1989). A trial court abuses its discretion when it exercises "its judgment, in an unwarranted way, in regard to a matter over which it has discretionary authority." *Johnson v. Abdullah*, 2021-Ohio-3304, ¶ 35. As the Ohio Supreme Court has stated, "While a reviewing court in any domestic-relations appeal must be vigilant in ensuring that a lower court's determination is fair, equitable, and in accordance with law, an appellate court must refrain from the temptation of substituting its judgment for that of the trier-of-fact, unless the lower

court's decision amounts to an abuse of discretion." *Martin v. Martin*, 18 Ohio St.3d 292, 295 (1985).

### B. Spousal Support

#### 1. Modification

{¶ 18} Husband argues that the court should have terminated his spousal-support obligation or modified it to zero. Wife argues there was no change in circumstances and the $4,000 per month obligation should not have been modified because Husband voluntarily retired.

{¶ 19} R.C. 3105.18, which governs the award and modification of spousal support, provides, in relevant part:

> (E) If a continuing order for periodic payments of money as [spousal support] is entered in a divorce . . . the court . . . does not have jurisdiction to modify the amount or terms of the . . . spousal support unless the court determines that the circumstances of either party have changed[.]
>
> . . .
>
> (F)(1) [A] change in the circumstances of a party includes, but is not limited to, any increase or involuntary decrease in the party's wages, salary, bonuses, living expenses, or medical expenses, or other changed circumstances so long as both of the following apply:
>
> > (a) The change in circumstances is substantial and makes the existing award no longer reasonable and appropriate.
> >
> > (b) The change in circumstances was not taken into account by the parties or the court as a basis for the existing award when it was established or last modified, whether or not the change in circumstances was foreseeable.
>
> (2) In determining whether to modify an existing order for spousal support, the court shall consider any purpose expressed in the initial order or award and enforce any voluntary agreement of the parties.

{¶ 20} We note that the party seeking the modification of spousal support has the burden of establishing that a modification is warranted. *Brzozowski v. Brzozowski*, 2014-Ohio-4820, ¶ 20 (8th Dist.).

{¶ 21} Husband argues that the $1,800 per month spousal support award is unreasonable and inappropriate considering that he is retired and in poor health and the award leaves him with less income than Wife. Husband further argues that the court erred when it failed to enumerate the parties' incomes used for its determination that Husband should pay $1,800 per month in spousal support. He also argues that the court abused its discretion by taking Current Wife's income into consideration when determining the spousal-support award. Whereas, Wife argues that the trial court erred by reducing the spousal support because Husband had ample ability to continue to pay $4,000 per month.

{¶ 22} In the instant case, the court concluded that there was a change of circumstances because of Husband's retirement and health issues. Husband was diagnosed with stage 3 renal cell carcinoma and his left kidney was removed in September 2019. In January 2020, he was diagnosed with stage 3 chronic kidney disease and also has basal cell carcinoma. Husband testified that he voluntarily retired at the age of 66 years old because of his declining health. Additionally, no evidence was presented that Husband retired to avoid his spousal-support obligation. Rather, Husband informed Wife in November 2019 that he planned to retire. *Walpole v. Walpole*, 2015-Ohio-3238, ¶ 15 (8th Dist.), citing *Roach v. Roach*, 61 Ohio App.3d 315 (8th Dist. 1989); *Tissue v. Tissue*, 2004-Ohio-5968 (8th Dist.)

("If a party is eligible to retire early and does not do so to defeat the spousal support obligation, then retirement can be considered as a legitimate decrease in income for purposes of modifying spousal support."); *Mlakar v. Mlakar*, 2013-Ohio-100, ¶ 23 (8th Dist.), quoting *Robinson v. Robinson*, 1994 Ohio App. LEXIS 1436, *2-3 (12th Dist. Mar. 4, 1994) ("While a voluntary retirement does not necessarily preclude a finding that an obligor spouse is voluntarily unemployed, *Drummer v. Drummer*, 3d Dist. No. 12-11-10, 2012-Ohio-3064, ¶ 31, a voluntary retirement 'does not bar consideration of [a party's] decrease in income when determining if there was a substantial change of circumstances.'") We do not find that the trial court abused its discretion by determining that this constitutes a substantial change in circumstances that made the existing award of $4,000 per month unreasonable and inappropriate.

{¶ 23} "Once a trial court finds there is a change in circumstances, the court must then determine whether spousal support is still necessary, and if so, what amount is reasonable." *Preseren v. Preseren*, 2011-Ohio-5181, ¶ 12 (8th Dist.), citing *Calabrese v. Calabrese*, 2007-Ohio-2760 (8th Dist.); *Carnahan v. Carnahan*, 118 Ohio App.3d 393, 398 (12th Dist.1998). R.C. 3105.18(C)(1) aids the court in deciding whether the amount of spousal support is "appropriate and reasonable" by providing several factors the court must consider. These factors include: (a) the parties' income from all sources, including income derived from the property division made by the court; (b) the relative earning abilities of the parties; (c) the parties' ages and physical, mental, and emotional conditions; (d) the parties'

retirement benefits; (e) the duration of the marriage; (f) minor child; (g) the standard of living during the marriage; (h) the parties' education; (i) the relative assets and liabilities of the parties; (j)the parties' contribution to education, training, or earning ability; (k) the time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience ; (l) the parties' tax consequences for a spousal support award; (m) the parties' lost income production capacity that resulted from that party's marital responsibilities; and (n) any other factor that the court finds to be relevant and equitable.

{¶ 24} The "trial court is not required to comment on each statutory factor; rather, the record must only show that the court considered the statutory factors when making its award." *Comella v. Parravano*, 2014-Ohio-834, ¶ 13 (8th Dist.), citing *Neumann v. Neumann*, 2012-Ohio-591, ¶ 17 (8th Dist.), citing *Carman v. Carman*, 109 Ohio App.3d 698, 703 (12th Dist.1996). Moreover, when considering a motion to modify a spousal-support order, "'[t]he court need only consider the factors which have actually changed since the last order.'" *Id.*, quoting *Mizenko v. Mizenko*, 2001 Ohio App. LEXIS 2514 (8th Dist. June 7, 2001).

{¶ 25} In the matter before us, the magistrate issued a detailed opinion, specifically addressing all the factors that applied to the parties, and based on those factors, it found that the spousal support should be modified to $1,800 per month. The court noted that the parties had a long-term marriage. The court further noted that Husband was earning $260,000 in 2019 when he filed his motion to modify and retired in August 2020. Husband elected not to receive his Social Security

retirement benefits or withdraw from his pensions, IRA, or 401(k) because Current Wife earns $160,000 per year and pays all his expenses. We note that "[w]hile a new spouse's income cannot be considered in determining an obligor's ability to pay spousal support, the court may consider the fact that the obligor directly benefits from sharing living expenses with his new wife." *Preseren* at ¶ 16, citing *Feldman v. Feldman*, 2009-Ohio-4202 (8th Dist.); *Manzella v. Manzella*, 2005-Ohio-4519, ¶ 12 (12th Dist.), citing *McNutt v. McNutt*, 2005-Ohio-3752 (12th Dist.).

{¶ 26} Although Husband chose not to apply for Social Security benefits until age 70 to maximize his monthly benefit, the evidence revealed that he would be entitled to $2,589 per month. He also has 401k and IRA accounts valued at over $605,000, along with a pension from the United Kingdom, which is unknown. Wife was employed as a realtor at the time of the trial and earned $16,850 in 2019. Wife also elected not to apply for Social Security benefits. The evidence revealed that Wife's potential benefit would be $586 per month. Wife's retirement accounts were valued at approximately $150,000 in addition to an inheritance of $124,000 (which was reduced by $16,000 to renovate her home).

{¶ 27} In summary, the magistrate considered all factors and made findings for each, ultimately explaining how they impacted the decision to modify Husband's spousal-support obligation, including the parties long-term marriage, all income sources, income derived from property divided, disbursed, or distributed pursuant to R.C. 3105.18(C)(1)(a), Wife's capability to produce income, Husband's estimated retirement income and assets, the fact that Current Wife pays all of Husband's living

expenses, the parties' potential Social Security benefits, Wife's estimated retirement income and assets, and Wife's decision to live frugally since the divorce. "Where the record evidences the trial court's consideration of the statutory allocation factors, and 'the judgment contains details sufficient for a reviewing court to determine that the support award is fair, equitable, and in accordance with the law,' the determination will be upheld." *La Spisa v. La Spisa*, 2023-Ohio-3467, ¶ 116 (8th Dist.), quoting *Chattree v. Chattree*, 2014-Ohio-489 (8th Dist.), citing *Daniels v. Daniels*, 2008 Ohio App. LEXIS 772, 9 (10th Dist. Mar. 4, 2008), citing *Schoren v. Schoren*, 2005-Ohio-2102, ¶ 11 (6th Dist.).

{¶ 28} We are mindful that the goal of spousal support is to reach an equitable result and there is no set mathematical formula to reach this goal. *Hloska v. Hloska*, 2015-Ohio-2153, ¶ 11 (8th Dist.), citing *Kaechele*, 35 Ohio St.3d 93 (1988). Additionally, when applying the abuse-of-discretion standard, we should not substitute our judgment for that of the trial court. *Martin*, 18 Ohio St.3d at 295. Here, the court considered all the statutory factors and found it equitable to reduce Husband's spousal-support obligation to $1,800 per month. Based on the foregoing, we do not find that the trial court abused its discretion.

{¶ 29} Accordingly, Husband's first assignment of error and Wife's first cross-assignment of error are overruled.

### 2. Contempt Finding

{¶ 30} In his second assignment of error, Husband argues that the trial court erred by finding him in contempt of court for failing to pay the $4,000 per month

spousal-support obligation because this obligation was extinguished by virtue of the new $1,800 per month spousal-support obligation, which was modified retroactively to August 28, 2020. He further argues that he cannot be in contempt of court for failing to pay $1,800 per month in spousal support because he had no knowledge of the court order until the new judgment entry was issued. We find Husband's argument circular and unpersuasive.

{¶ 31} "Contempt is defined in general terms as disobedience of a court order. A prima facie case of contempt is established when the divorce decree is before the court along with proof of the contemnor's failure to comply with it." *Calabrese v. Calabrese*, 2007-Ohio-2760, ¶ 34 (8th Dist.), citing *Dzina v. Dzina*, 2004-Ohio-4497 (8th Dist.). The party initiating the contempt proceedings must demonstrate, by clear and convincing evidence, that the contemnor has failed to pay support. *Pugh v. Pugh*, 15 Ohio St.3d 136, 139-140 (1984). The contemnor then bears the burden of proving his inability to pay the court-ordered support. *Id.* at 140.

{¶ 32} Here, Husband was obligated to pay monthly spousal support payments of $4,000 to Wife pursuant to the terms of their separation agreement, which was incorporated into their judgment entry of divorce in January 2009. There is no dispute that Husband's obligation was not stayed or reduced during the pendency of his motion to modify spousal support. Also undisputed is the fact that Husband unilaterally decided to stop paying spousal support in October 2020, despite having the means to do so. In fact, Husband paid just one monthly payment

of $4,000 toward his spousal-support obligation during the pendency of these post-decree proceedings, with his last payment made in September 2020.

{¶ 33} During trial, the magistrate stated to Husband that his payments should not be zero while the case was pending. Specifically, the magistrate said, "[S]ome type of payment should be made right now, Mr. Mills." (Tr. 81.) At the insistence of the Court, he made a payment of $4,000 after the first day of the trial. He then continued to make no further payments even though the Court asked him to be in substantial compliance with his obligation. The court found that Husband had the ability to comply with the support order for the following reasons: "his savings and retirement accounts. [Husband] incurred additional expenses to move and purchase a house with his current wife. [Husband's] defense is without merit and [Husband] is in contempt of court." (Mag. Decision, Nov. 12, 2021.) The court determined the arrearages to be $60,026.13, which included $4,000 per month from October 2020 through August 27, 2020, and $1,800 per month from August 28, 2020, to August 10, 2023. In total, Husband stopped paying spousal support for nearly three years.

{¶ 34} In light of the foregoing, we do not find that the trial court abused its discretion when it found Husband in contempt for failing to comply with the court's spousal-support order. This court is troubled by Husband's unilateral decision to violate his court-ordered obligation, especially when he was advised by the court to comply with the order and he was financially able to do so. Indeed, "[t]his is not the case where the contemnor has demonstrated an inability to work, an involuntary

termination, a significant medical issue, or a complete depletion of financial resources." *Palnik v. Crane*, 2019-Ohio-3364, ¶ 59 (8th Dist.), citing *Herold v. Herold*, 2004-Ohio-6727 (10th Dist.); *Zifer v. Huffman*, 2018-Ohio-322 (10th Dist.); *Wagshul v. Wagshul*, 2010-Ohio-3120, ¶ 41 (2d Dist.). Rather, it appears that Husband's noncompliance with the order was based on a litigation strategy that proved to be unsuccessful.

{¶ 35} Therefore, Husband's second assignment of error is overruled.

### C. Attorney Fees

{¶ 36} In Wife's second cross-assignment of error, Wife challenges the trial court's total award of attorney's fees. She argues that the trial court's award of $3,000 in attorney fees was "unreasonably low." Wife contends that Husband should be ordered to reimburse her $19,000 in attorney fees for the costs she incurred regarding Husband's motion to modify spousal support, Husband's non-compliance with discovery, and her motion for show cause.

### 1. Husband's Motion to Modify Spousal Support and Husband's Noncompliance with Discovery

{¶ 37} In post-decree divorce proceedings, a court may award all or part of reasonable attorney fees and litigation expenses to either party if the court finds the award equitable. R.C. 3105.73(B). *Allan v. Allan*, 2019-Ohio-2111, ¶ 95 (8th Dist.). In determining whether such an award is equitable, "the court may consider the parties' income, the conduct of the parties, and any other relevant factors the court deems appropriate, but it may not consider the parties' assets." R.C. 3105.73(B).

The decision to award attorney fees under R.C. 3105.73 lies within the sound discretion of the trial court and will not be reversed absent an abuse of that discretion. *Allan* at ¶ 95, citing *Huffer v. Huffer*, 2010-Ohio-1223, ¶ 19 (10th Dist.).

{¶ 38} Wife contends that she incurred substantial attorney fees because Husband's motion to modify spousal support was premature, Husband did not comply with the court's discovery orders or her discovery requests prompting her to file a motion to compel, and Husband did not disclose the name of his expert until 19 days before the February 2021 trial date, which caused the trial to be rescheduled to March 2021.

{¶ 39} Here, the court considered the R.C. 3105.73(B) factors and did not award reasonable attorney fees for Husband's spousal-support motion and non-compliance with discovery because the court found that it dealt with the discovery issues, the motion and discovery were not complex, and Husband suffered from health issues, which delayed his retirement. The court also noted that Wife did not update some of her accounts. Based on the foregoing, we cannot say the court abused its discretion.

### 2. Wife's Motion to Show Cause

{¶ 40} With regard to the contempt proceedings and Wife's attorney fees, R.C. 3105.18(G) requires the trial court to impose reasonable attorney fees on a party who is found in contempt of court for failure to make spousal-support payments.

{¶ 41} As discussed above, Husband was found in contempt of court for unilaterally deciding to violate the court's order and stop paying spousal support in

October 2020.  As of August 2023, the court determined Husband's arrearage to be $60,026.13.  The court assessed the reasonableness of the attorney fees associated with the contempt proceedings and found that an award of attorney fees of $3,000 was appropriate and reasonable.  In the domestic relations arena, the trial court is generally given broad discretion in the fashioning of equitable relief under the specific facts and circumstances of each case.  *See Levy v. Levy*, 2014-Ohio-2650, ¶ 42 (8th Dist.).  With this in mind, even if we were to disagree with the court's rationale, we decline to find that it abused its discretion when it awarded Wife $3,000 in attorney fees associated with the contempt finding.

**{¶ 42}** Therefore, Wife's second cross-assignment of error is overruled.

**{¶ 43}** Judgment is affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MARY J. BOYLE, JUDGE

EILEEN T. GALLAGHER, P.J., and
EMANUELLA D. GROVES, J., CONCUR