[Cite as *Lakes v. Lakes*, 2025-Ohio-2187.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

|  |  |  |
|---|---|---|
| CYNTHIA A. LAKES, | : | CASE NO. CA2024-04-052 |
| Appellee, | : | |
| | : | <u>OPINION AND</u> |
| - vs - | | <u>JUDGMENT ENTRY</u> |
| | : | 6/23/2025 |
| PHILLIP LAKES, | : | |
| Appellant. | : | |

APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
DOMESTIC RELATIONS DIVISION
Case No. DR10020159

Lampe Law Office, LLC, and Stephen Otte, for appellee.

Smith, Meier & Webb, LPA, and Andrew P. Meier; and Melanie B. Walls, for appellant.

_____

# **O P I N I O N**

**BYRNE, P.J.**

{¶ 1}  Phillip Lakes appeals from a decision of the Butler County Court of Common Pleas, Domestic Relations Division, which modified spousal support. For the reasons that follow, we affirm the domestic relations court's decision.

## I. Factual and Procedural Background

{¶ 2}  Phillip and Cynthia married in 1976. The marriage produced three children. In 2010, after 34 years of marriage, and after the emancipation of all three children, Cynthia filed for divorce. The court issued a decree of divorce later that year.

{¶ 3}  At the time of the divorce, Phillip was 54 years old and earned $96,000 a year. Cynthia was 53 years old. After the birth of their first child, Cynthia did not have a career and instead worked as a stay-at-home mother. This arrangement continued throughout the marriage. Cynthia had various medical conditions, including migraines, neuropathy in her hands and feet, and sleep apnea.

{¶ 4}  Based on these facts and others, the domestic relations court in the decree of divorce ordered that Phillip pay Cynthia $3,000 per month in spousal support. Spousal support was terminable upon either party's death, or Cynthia's marriage or cohabitation. Otherwise, Phillip would be obligated to pay Cynthia spousal support for her life. The domestic relations court retained continuing jurisdiction over spousal support.

{¶ 5}  Cynthia appealed from the decree of divorce. Following mediation in this court, Phillip and Cynthia agreed that spousal support would be increased to $3,500 per month.

{¶ 6}  In 2022, Phillip moved the domestic relations court to modify spousal support. Phillip asserted that a change of circumstances had occurred. Specifically, Phillip alleged that he would be retiring from employment and would begin receiving social security benefits in 2023. He requested that the court reduce spousal support.

### A. The Hearing

{¶ 7}  The matter proceeded to a hearing before a magistrate over two days in April 2023. At the hearing, evidence was introduced that Cynthia lived in a two-bedroom, 750 square foot condo in Colorado. In April 2022, Cynthia began receiving social security

benefits of $1,197 per month after deducting Medicare costs. This social security benefit had increased to $1,321 by the date of the hearing. In the two years preceding Cynthia's receipt of social security benefits, her sole source of income was spousal support, which amounted to $39,000 per year after taxes.

{¶ 8} Cynthia explained that she used a "functional" doctor, who did not accept insurance, for holistic treatment. This doctor prescribed Cynthia supplements costing $300 per month. Cynthia also saw a chiropractor every week and it cost her $75 each time she saw him. Cynthia did not eat gluten, sugar, or dairy and bought organic foods due to her medical conditions. As a result, she was spending $1,000 per month on groceries. Cynthia paid a mortgage on her condo and had a car loan. She planned to move to a different city in Colorado to be closer to family and hopefully find a larger home.

{¶ 9} Cynthia had multiple health issues. Her medical and dental expenses were $16,548 in 2020 and $19,024 in 2021. Due to her medical issues, Cynthia was not able to work. Cynthia had no education degrees or specialized certifications and never had a career other than some entry level positions. Cynthia was 65 years old at the time of the hearing.

{¶ 10} Cynthia received half of the parties' retirement accounts in the divorce. The amount she received totaled approximately $55,000. She used $10,000 of those funds towards her condo, which she bought in 2013 for $102,000. She also made an investment with a company that buys and "flips" houses but lost money on that investment. She used $6,000 to purchase hearing aids.

{¶ 11} Phillip, who was 66 years old at the time of the hearing, also testified. He received social security benefits, after Medicare costs, of $3,320 per month. Phillip did not have any other sources of income and had submitted his resignation to his employer to be effective April 21, 2023, or 10 days after the hearing concluded. Phillip had a

retirement account that was valued at $179,025.94.

{¶ 12} Phillip had remarried in 2014. His wife was employed and contributed approximately $7,600 each month to household expenses, or $91,000 per year. In 2020, the couple's household income totaled $215,235, and in 2021 it totaled $198,104. Phillip and his wife were living comfortably and able to tithe 10 percent of their joint income to their church, which amounted to approximately $19,516 in 2020 and $13,595 in 2021.

**B. The Magistrate's Decision**

{¶ 13} On April 28, 2023, the magistrate issued a decision on Phillip's spousal support motion and another issue not relevant to this appeal. The magistrate found that Phillip had established a change of circumstances rendering the then-current spousal support award inequitable. The magistrate considered the spousal support modification factors set forth in R.C. 3105.18(C)(1). The magistrate also noted that spousal support was previously Cynthia's only source of income, but now that she was also receiving social security benefits.

{¶ 14} The magistrate noted that Phillip was 66 years old and would like to retire. The magistrate found that it was "unrealistic" to expect that Phillip could maintain $3,500 payments in addition to supporting himself. The magistrate also noted that while Cynthia and Phillip had received equal shares of their marital assets at the time of the divorce, each had chosen different investments of that money and that Cynthia's investment decisions were less successful. The magistrate commented with disfavor on Cynthia's choice of expensive, alternative medical care, and the fact that she wanted to move from her condo to a larger home.

{¶ 15} Noting that the original spousal support award was equivalent to 43.75% of the parties' income differential at the time of the divorce, the magistrate reduced Phillip's spousal support obligation to $875 per month, which represented 43.75% of the

differential between Cynthia's and Phillip's social security benefits at the time of the hearing.

## C. Objections to the Magistrate's Decision

{¶ 16} On May 12, 2023, Cynthia objected to the magistrate's decision. The objection stated:

> Undersigned counsel files this objection for purposes of preserving Plaintiff's objection to the Magistrate's Decision. A transcript of the proceedings has been requested. Plaintiff will supplement this objection with specific arguments and objections after review of the transcript.

Cynthia made no substantive argument in her written objection.

{¶ 17} Phillip afterward moved to dismiss Cynthia's objections for failing to comply with Civ.R. 53(D)(3)(b)(ii), which requires that objections to a magistrate's decision "shall be specific" and state with "particularity" the grounds of the objection.

{¶ 18} In response to the motion to dismiss, Cynthia's counsel argued that Cynthia received the magistrate's decision on May 8, 2023, and that she retained counsel a few days later, on May 12, 2023, which was the deadline for filing objections. Counsel indicated that given the narrow timeframe, it was not reasonable for Cynthia to be expected to identify all the specific objections she had without having the opportunity to review the hearing transcript. In the response, Cynthia also requested leave to supplement her objections pursuant to Civ.R. 53(D)(3)(b)(iii), and stated a list of specific "anticipated objections."

{¶ 19} On June 28, 2023, Cynthia filed a supplemental brief in support of her objections to the magistrate's decision. Relevant to this appeal, Cynthia objected to the magistrate's recommended reduction in spousal support.

{¶ 20} On June 30, 2023, the domestic relations court issued an all-purpose entry. In the entry, the court granted Cynthia leave to file the spousal support hearing transcript

within five business days and granted Phillip leave to review and respond to the supplemental brief. Phillip thereafter filed a response to Cynthia's supplemental brief.

**D. Decision on Motion to Dismiss and Objections**

{¶ 21} In another all-purpose entry filed March 29, 2024, the court first addressed Phillip's motion to dismiss Cynthia's objections. The court noted that Cynthia's original May 12 objection was filed timely and the transcript, which was extensive, was not filed until May 31, 2023. The court found that Phillip was given "ample time" to respond to the supplemental brief after the transcript was made available. Accordingly, the court denied Phillip's motion to dismiss Cynthia's objections to the magistrate's decision. The court did not address Phillip's argument concerning Cynthia's alleged lack of compliance with the Civ.R. 53 particularity requirements applicable to objections to magistrate's decisions.

{¶ 22} The court then addressed the merits of Cynthia's objections. Regarding the modification of spousal support, the court noted that Cynthia's income had increased due to her receipt of social security benefits.

{¶ 23} Regarding the performance of the parties' retirement accounts, the court found that while Cynthia had made some poor investments, the parties' initial property division was made *before* the domestic relations court considered spousal support, and the domestic relations judge had considered that division of property in considering spousal support. The court also noted that Phillip's increase in his retirement assets was attributable to his continued employment and contributions to retirement long after the divorce. The court noted the almost $2,000 disparity in monthly social security retirement benefits between Cynthia and Phillip.

{¶ 24} The court also noted that Phillip was "assisted in his living expenses by his current wife" who contributed "significantly" to the household. The court found that while this was a relevant consideration, it was "not in and of itself determinative."

{¶ 25} The court stated that it was also considering the length of the parties' marriage, the parties' health and earning ability, respective retirement assets, and the income tax consequences to Cynthia of the spousal support payments.

{¶ 26} Based on the foregoing analysis, the court found that it was equitable to modify spousal support to $2,850 per month, which was a reduction of $650 per month from the then-current $3,500 per month spousal support amount, but much higher than the $875 per month amount ordered by the magistrate. Accordingly, the court sustained Cynthia's objection regarding spousal support and modified the magistrate's decision as outlined above.

{¶ 27} Phillip appealed, raising two assignments of error.

## II. Law and Analysis

### A. Specificity When Objecting to Magistrate's Decision

{¶ 28} Phillip's first assignment of error states:

THE TRIAL COURT ERRED IN FAILING TO DISMISS APPELLEE'S OBJECTIONS.

{¶ 29} Phillip contends that the trial court erred by not dismissing Cynthia's objections to the magistrate's decision due to her failure to raise specific objections. Phillip also argues that Cynthia did not request leave (or obtain an order granting leave) to supplement her objections after the fourteen-day objection deadline had expired.

{¶ 30} Civ.R. 53(D)(3)(b)(i) provides that a party may file written objections to a magistrate's decision within 14 days of the filing of the decision. Civ.R. 53(D)(3)(b)(ii) provides, "An objection to a magistrate's decision shall be specific and state with particularity all grounds for objection."

{¶ 31} Civ.R. 53(D)(3)(b)(iii) provides that if a party files timely objections prior to the date on which a transcript is prepared, the party "may seek leave of court to

supplement the objections."

{¶ 32} Civ.R. 6(B) provides, generally, that when the Rules of Civil Procedure provide that an act is required or allowed within a specific time, "the court for cause shown may at any time in its discretion," enlarge the period of prescribed time to comply with the civil rules "if request therefor is made before the expiration of the period originally prescribed," or extend the period of prescribed time where the failure to act was the result of excusable neglect "upon motion made after the expiration of the specified period." Civ.R. 6(B)(1) and (2).

{¶ 33} Cynthia's original objections to the magistrate's decision stated:

> Undersigned counsel files this objection for purposes of preserving Plaintiff's objection to the Magistrate's Decision. A transcript of the proceedings has been requested. Plaintiff will supplement this objection with specific arguments and objections after review of the transcript.

{¶ 34} Cynthia's original objection did not comply with Civ.R. 53(D)(3)(b)(ii) as she did not state her objections with specificity or particularity. Nor did Cynthia seek an enlargement or extension of time under Civ.R. 6(B)(1) or (2). Although Cynthia's objection noted her intention to supplement her objections after review of the transcript, she did not seek leave of court to file supplemental objections as required by Civ.R. 53(D)(3)(b)(iii).

{¶ 35} But even assuming that the domestic relations court erred in denying Phillip's motion to dismiss Cynthia's objection, this error would not require us to set aside the domestic relations court's decision granting Cynthia's objections and reinstate the magistrate's decision as the trial court's order. Civ.R. 53(D)(4)(c) states where no objections are timely filed, a court may adopt the magistrate's decision, "unless it determines that there is an error of law or other defect evident on the face of the magistrate's decision." And Civ.R. 53(D)(4)(b) provides that "[w]hether or not objections are timely filed, a court may adopt or reject a magistrate's decision in whole or in part,

with or without modification."

{¶ 36} Thus, regardless of whether objections were timely filed, Civ.R. 53(D)(4) still required the domestic relations court to conduct an independent review of the magistrate's decision and determine whether the magistrate properly determined the factual issues and appropriately applied the law. *See Horn v. DeGennaro*, 2024-Ohio-5217, ¶ 35 (8th Dist.), citing *Ohio Environmental Protection Agency v. Lowry*, 2011-Ohio-6820, ¶ 11 (10th Dist.). This means that a domestic relations court has authority to reject or modify a magistrate's decision without regard to whether a party properly objected to the magistrate's decision. *See Solomon v. Solomon*, 2004-Ohio-2486, ¶ 15 (7th Dist.) (interpreting an earlier but substantively similar version of Civ.R. 53). As a result, Cynthia's failure to assert specific objections to the magistrate's decision did not prohibit the domestic relations court from rejecting and modifying the magistrate's decision. We therefore find no reversible error, and we overrule Phillip's first assignment of error.

## B. Modification of Spousal Support

{¶ 37} Phillip's second assignment of error states:

THE TRIAL COURT ERRED IN SUSTAINING APPELLEE'S OBJECTION AND OVERRULING THE MAGISTRATE'S DECISION AS TO APPELLANT'S SPOUSAL SUPPORT OBLIGATION.

{¶ 38} Phillip argues that the domestic relations court erred in modifying spousal support based on an improper consideration of his retirement assets and his spouse's income.

### 1. Standard of Review

{¶ 39} A domestic relations court has broad discretion in determining a spousal support award, including whether to modify an existing award. *Strain v. Strain*, 2005-Ohio-6035, ¶ 10 (12th Dist.). We review the decision to modify a spousal support award for an

abuse of discretion. *Id.* An abuse of discretion connotes that the trial court's decision was arbitrary, unreasonable, or unconscionable. *Id.*

**2. Applicable Law**

{¶ 40} R.C. 3105.18(E) governs the modification of spousal support. Pursuant to that statute, for a court to modify an award of spousal support set forth in a divorce decree, it must first have reserved jurisdiction to do so. *Strain* at ¶ 11. Furthermore, it must find that a change in circumstances for either party has occurred. *Id.*; R.C. 3105.18(E).

{¶ 41} Neither party disputes that the domestic relations court reserved jurisdiction to modify spousal support in the decree. Philip argues that a change of circumstances occurred, and Cynthia does not challenge that a change of circumstances occurred.

{¶ 42} Once the domestic relations court has determined that a change of circumstances has occurred, the court must then determine whether spousal support is still necessary, and if so, what amount is "appropriate and reasonable." R.C. 3105.18(C)(1); *Hutchinson v. Hutchinson*, 2010-Ohio-597, ¶ 24 (12th Dist.). In determining that a new spousal support award is "appropriate and reasonable," the court must consider the factors listed in R.C. 3105.18(C)(1). *Hutchinson* at ¶ 24. The court is not required to comment on each factor, but must indicate the basis for its award in sufficient detail to allow a reviewing court to determine the award is fair, equitable, and in accordance with the law. *Id.*

{¶ 43} The factors to be considered by the court include the following:

(a) The income of the parties, from all sources, including, but not limited to, income derived from property divided, disbursed, or distributed under section 3105.171 of the Revised Code;
(b) The relative earning abilities of the parties;
(c) The ages and the physical, mental, and emotional conditions of the parties;
(d) The retirement benefits of the parties;
(e) The duration of the marriage;

(f) The extent to which it would be inappropriate for a party, because that party will be custodian of a minor child of the marriage, to seek employment outside the home;
(g) The standard of living of the parties established during the marriage;
(h) The relative extent of education of the parties;
(i) The relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties;
(j) The contribution of each party to the education, training, or earning ability of the other party, including, but not limited to, any party's contribution to the acquisition of a professional degree of the other party;
(k) The time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience so that the spouse will be qualified to obtain appropriate employment, provided the education, training, or job experience, and employment is, in fact, sought;
(l) The tax consequences, for each party, of an award of spousal support;
(m) The lost income production capacity of either party that resulted from that party's marital responsibilities;
(n) Any other factor that the court expressly finds to be relevant and equitable.

{¶ 44} Phillip does not argue that the domestic relations court failed to consider these factors, but rather that it incorrectly conducted its analysis of the factors in two ways.

{¶ 45} Phillip first argues that the court improperly compared his retirement assets to those of Cynthia. Phillip argues that because his investments fared better than Cynthia's investments over the years, the court improperly penalized him for making good investment decisions.

{¶ 46} However, the trial court's consideration of the parties' relative retirement benefits as a spousal support factor was not based on the use or performance of those funds since the divorce. Instead, the court considered the fact that Phillip continued in his employment for years after the divorce, which enabled him to continue to contribute to his retirement, and continue increasing his social security benefit, while Cynthia's personal circumstances did not permit her to do the same. Those personal circumstances were the same as those that resulted in Cynthia receiving a spousal support award for life, i.e., the

fact that Cynthia worked as a stay-at-home mother during the marriage and did not have a professional career. Moreover, her medical conditions minimized her earning ability. In other words, the court was not penalizing Phillip for making good investment decisions, but merely noting that due to Cynthia's situation during the marriage, she was unable to save for retirement in the same manner as Phillip. Regardless, the domestic relations court was entitled to consider the "retirement benefits of the parties" in determining a fair and equitable spousal support award. R.C. 3105.18(C)(1)(d).

{¶ 47} Second, Phillip argues that the domestic relations court improperly considered the income of his current wife as a factor in determining the amount of spousal support owed to Cynthia. R.C. 3105.18(C)(1)(a) requires consideration of the parties' relative income. However, we have held that, in this context, the parties' income does not include income earned by another spouse. *Carnahan v. Carnahan*, 118 Ohio App.3d 393, 401 (12th Dist.1997); *Hutchinson*, 2010-Ohio-597 at ¶ 34.

{¶ 48} The domestic relations court considered Phillip's wife's income when it stated: "[Phillip] is assisted in his living expenses by his current wife, who contributes significantly to the household. The court finds that this is a relevant factor in its analysis; however it is not in and of itself determinative."

{¶ 49} The court considered Phillip's wife's income, but only as it related to reducing Phillip's living expenses. The court was observing that Phillip's financial situation, including his spouse's contribution to joint expenses, allowed him to live comfortably, while Cynthia's expenses by and large exceeded her income. This was a proper consideration based upon our case law and the case law of our sister districts.

{¶ 50} In *Mustard v. Mustard*, 2010-Ohio-2175 (12th Dist.), a husband moved to modify spousal support to his former wife. *Id*. at ¶ 3. The court lowered the husband's spousal support payment but not to the extent he wanted and so he appealed. *Id.* at ¶ 4,

7. On appeal (and much like the appeal before us), the husband argued that the court had erred by considering his new wife's salary in determining appropriate spousal support. *Id*. at ¶ 15. This court rejected the husband's argument, finding that the domestic relations court had never "imputed" his wife's salary to him. *Id*. at ¶17. Instead, we found that the court had only considered the new wife's salary because the couple shared expenses, thereby reducing the husband's living expenses. *Id*. at ¶ 20. In support, we cited *Manzella v. Manzella*, 2005-Ohio-4519, ¶ 12 (2d Dist.) (upholding a trial court's decision to consider that an "obligor directly benefits from sharing living expenses with his new spouse," and such consideration is properly considered "as part of the 'any other factor' section of the statute. R.C. 3105.18[C][1][n]"); and *Fisher v. Fisher*, 2009-Ohio-4739, ¶ 35-36 (5th Dist.), (finding no abuse of discretion where a trial court considered the fact that appellant directly benefited from sharing living expenses because his new wife's income was "available for living expenses").

{¶ 51} Other courts agree with this proposition. In *McNutt v. McNutt*, 2005-Ohio-3752 (2d Dist.), the Second District Court of Appeals noted the holding in *Carnahan* that a new spouse's income is not considered in determining an obligor's ability to pay. *Id*. at ¶ 15. But the appeals court found that a trial court "can appropriately consider the fact that an individual benefits from sharing living expenses with another person." *Id*. The court found that this was a proper consideration under R.C. 3105.18(C)(1)(n), which allows consideration of "[a]ny other factor that the court expressly finds to be relevant and equitable." *Id. Accord Preseren v. Preseren*, 2011-Ohio-5181, ¶ 16 (8th Dist.) and *Mills v. Mills*, 2025-Ohio-452, ¶ 25 (8th Dist.).

{¶ 52} Accordingly, the domestic relations court's consideration that Phillip's wife's income assisted him in his living expenses was a relevant and proper consideration by the court under R.C. 3105.18(C)(1)(n). Therefore, the domestic relations court did not err

or abuse its discretion in this regard.

{¶ 53} Moreover, the domestic relations court did not base its spousal support decision solely on Phillip's wife's contribution to joint household expenses. Rather, the domestic relations court indicated that it also considered the "the length of the parties' marriage, the parties' health and earning ability, their respective retirement assets, and the tax consequences of the support as income to Plaintiff under the parties' Decree." The court further specifically noted the approximate $2,000 difference in monthly social security income between the parties.

{¶ 54} The domestic relations court's decision appears to have been guided by the initial spousal support decision, which found, given the circumstances of the marriage and Cynthia's medical needs, that Cynthia would need substantial support from Phillip for life. The court also took into consideration that Cynthia was now drawing social security, as was Phillip, and that Phillip was drawing considerably more social security than Cynthia. The domestic relations court is vested with broad discretion in determining what spousal support award is "appropriate and reasonable." R.C. 3105.18(C)(1). Based on the facts presented, we find that the domestic relations court's decision was reasonable and therefore not an abuse of discretion. We overrule Phillip's second assignment of error.

### III. Conclusion

{¶ 55} Phillip has failed to demonstrate reversible error in the trial court's refusal to dismiss Cynthia's objections for failing to comply with Civ.R. 53. Phillip has failed to establish an abuse of discretion in the court's determination of appropriate and reasonable spousal support.

Judgment affirmed.

HENDRICKSON and M. POWELL, JJ., concur.

## J U D G M E N T   E N T R Y

The assignments of error properly before this court having been ruled upon, it is the order of this court that the judgment or final order appealed from be, and the same hereby is, affirmed.

It is further ordered that a mandate be sent to the Butler County Court of Common Pleas, Domestic Relations Division, for execution upon this judgment and that a certified copy of this Opinion and Judgment Entry shall constitute the mandate pursuant to App.R. 27.

Costs to be taxed in compliance with App.R. 24.

/s/ Matthew R. Byrne, Presiding Judge

/s/ Robert A. Hendrickson, Judge

/s/ Mike Powell, Judge